**Joseph M. McCONNELL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 24934.**

United States Court of Appeals
Fifth Circuit.

April 19, 1968.

Rehearing Denied May 14, 1968.

Barry Hess, Mobile, Ala., for appellant.

Don Conway, Asst. U. S. Atty., Mobile, Ala., Vernol R. Jansen, Jr., U. S. Atty., for appellee.

Before BROWN, Chief Judge, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Joseph M. McConnell was convicted on a jury trial of two counts of having passed and uttered a forged United States postal money order, in violation of 18 U.S.C. § 500, and sentenced to a term of five years on each count to run concurrently.

On his appeal he assigns as error: (1) denial of his motion for acquittal in that the United States failed to prove that the crime occurred within the territorial jurisdiction of the court; (2) the trial court's restriction of the cross-examination of a principal prosecution witness, a Government handwriting expert, which was material to the credibility of the witness; and (3) the trial court's restriction of the closing argument of counsel which noted the absence of testimony of a Government eyewitness to a police line-up where appellant had been identified.

We perceive no error as claimed by appellant as to proof of venue of the crime. The Government witnesses testified that the money order was passed at Greer's No. 6 Store on Cedar Point Road, 3311 Dauphin Island Parkway, and that this store was in the City of Mobile, which is within the jurisdiction of this court. See Weaver v. United States, 5 Cir., 1962, 298 F.2d 496.

The forged money order was one of a series of money orders stolen in the burglary of the Nesbit, Mississippi, United States Post Office. The Government produced no witness who saw appellant pass the forged money order, the cashier who accepted the money order having been unable to identify the person who presented it. Appellant testified in his own behalf and denied having endorsed or cashed the money order. However, evidence was adduced to show one of appellant's latent fingerprints on the money order and Albert W. Somerford, Director of Scientific Identification Laboratories in the Bureau of Chief Postal Inspector, Washington, D. C., testified that in his opinion the writing on the money order was written by the same person, appellant, who wrote three so-called known samples of appellant's handwriting.

Defense counsel attempted to impeach the testimony of Mr. Somerford by interrogating him about testimony he had given against appellant in a trial in Marianna, Florida, involving another forged United States postal money order, one of the series stolen from the Nesbit, Mississippi, Post Office. Counsel tried to show that the expert witness had made a mistake in identifying the handwriting on the money order in that case as being that of appellant, as compared with three samples of his handwriting. The same samples of handwriting used in the Marianna, Florida, trial were used for com-

parison purposes in the instant trial though, of course, the same money order was not involved. The district judge declined to allow defense counsel to expand his examination of the expert witness in this regard, sustaining the Government's objection with the observation that this involved "another money order, another case." [1]

In our view the Government's case depended on the jury's acceptance of the credibility and expertise of Mr. Somerford. We intimate, of course, no view on whether or not the expert had previously made a mistake in the identification of appellant's handwriting at the Marianna trial. But defense counsel was entitled to probe this issue since the three counterpart exhibits of appellant's so-called known handwriting were the same in the Marianna case as in the present case. If the defense could show that the witness had erroneously concluded that one of the so-called known samples of appellant's handwriting was in fact written by another person, namely, one Delbert Gordy, and that a Government witness had so testified in the Marianna trial, to the knowledge of the expert, this would have seriously reflected upon the credibility and expertise of the prosecution's most important witness, and the jury might not have accepted his testimony as an expert, as evidently it did, and might easily have acquitted appellant. No one will ever know for the jury's deliberations were secret.

It is well established that in criminal cases great latitude is generally permitted in the cross-examination of a prosecution witness in order to test his credibility, especially as to any prior inconsistent statement which could be used in an effort to impeach him. Jennings v. United States, 10 Cir., 1966, 364 F.2d 513, 515. The rule should apply with equal force to cross-examination of a witness about matters which touch upon and test his experience and qualifications as an expert. Cross-examination is a right and its availability is essential to a fair trial; accordingly, cross-examination of a witness in matters pertinent to his credibility ought to be given the largest possible scope. Harris v. United States, 9 Cir., 1967, 371 F.2d 365, 366, 367. It is improper for a trial judge to restrict the cross-examination of a Government witness where counsel for defendant attempted to ask an impeaching question and was endeavoring to explore the possibility that the testimony of the witness may have been in some way influenced by suggestions or statements made to him. United States v. Standard Oil Company, 7 Cir., 1963, 316 F.2d 884, 892. Where the Government's case may stand or fall on the jury's belief or disbelief of one witness, his credibility is subject to close scrutiny. Gordon v. United States, 344 U.S. 414, 417, 73 S.Ct. 369, 372, 97 L.Ed. 447 (1953). By analogy, at least, the preceding citations of cases

---

1. The colloquy between the court and defense counsel, in chambers, on this subject follows:

    "THE COURT: Tell the Court what you are trying to show.

    "MR. HESS: Your Honor, the witness on the stand has been qualified as an expert and is testifying to his opinion based upon that qualification as an expert. I am trying to show by way of impeachment of his testimony before this jury, that he has previously examined a Money Order that to his knowledge was examined and identified by a Government's witness as having been endorsed by Delbert Gordy and in his testimony he identified that endorsement as being the writing—the handwriting of Joseph McConnell. That is my understanding of the facts. If I am in error, I stand to be corrected. That is what I am informed.

    "THE COURT: Just one minute. I want to be sure I understand you. You say in another trial—

    "MR. HESS: Yes, sir, in December of '66.

    "THE COURT:—he testified that this defendant endorsed a Money Order.

    "MR. HESS: That this defendant did, and another witness testified that he saw somebody else endorse it—a Government's witness testified that he saw Delbert Gordy make that endorsement.

    "THE COURT: I sustain the objection. You can't go into that. That is another Money Order, another case."

stand for the principle that liberal cross-examination of a witness should be also permitted as to his qualifications and capacity to testify as an expert. In our view the district judge committed reversible error in not allowing a thorough and complete cross-examination of Mr. Somerford on the question of a possible prior inconsistent opinion involving the handwriting of this same defendant, and on the issue of his credibility and expertise.

We further believe that the trial court erroneously restricted defense counsel's final argument in not permitting him to note the absence of testimony from a Government eyewitness, the manager of Greer's Store, who had identified appellant in a Mobile Police Station line-up. But the ruling was not of such consequence or prejudice as to constitute reversible error.

Reversed and remanded for a new trial.