432 F.2d 395
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Johnson SEAY and Hoyt Jackson McGee, Defendants-Appellants.
 No. 27990.
 United States Court of Appeals, Fifth Circuit.
 Oct. 1, 1970, Rehearing Denied Oct. 22, 1970.
 
 Harry Wilters, Jr., Bay Minette, Ala. (court appointed), for Seay.
 Thomas M. Haas, Mobile, Ala. (court appointed), for McGee.
 William R. Favre, Jr., Asst. U.S. Atty., C. S. White-Spunner, Jr., U.S. Atty., Irwin W. Coleman, Jr., Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.
 Before JOHN R. BROWN, Chief Judge, and GOLDBERG and CLARK, Circuit judges.
 CLARK, Circuit Judge:
 
 
 1
 Thomas Johnson Seay and Hoyt Jackson McGee were jointly indicted, tried and convicted on a three count indictment charging violation of a statute of the United States which prohibits the passing or uttering, with intent to defraud, of a falsely made or counterfeited obligation of the United States.[1] Each was sentenced to a term of four (4) years.
 
 
 2
 On this appeal Seay urges the reversal of his conviction on two grounds: (1) his fingerprints taken by the Mobile, Alabama police should not have been admitted into evidence in his federal counterfeiting trial because such evidence was obtained as a consequence of an arrest on a State vagrancy charge lodged for the sole purpose of giving federal officers time to 'make a case' against him; and (2) evidence obtained in a warrant-authorized search of McGee's automobile by United States treasury agents was inadmissible as the fruit of an unreasonable and illegal search because the automobile was then already the subject of an illegal State seizure.
 
 
 3
 McGee adopts Seay's point (2) and further attacks his conviction by contending that he was denied a fair trial by virtue of: (a) the period of time which elapsed between the date of arrest and the time of trial; (b) the action of the government in refusing to produce evidence at the preliminary examination; (c) the action of the court in admitting testimony-- the nature of which was unknown to the defendants until the witness was called-- which tended to establish that a crime not charged in the indictment had been committed by the defendants; (d) the court's refusal to sever the trials of each defendant; and (e) improper remarks in final argument by the United States Attorney.
 
 
 4
 Viewed most favorably to the government[2] the proof showed the following facts.
 
 
 5
 On the morning of April 25, 1968 Seay and McGee, together with their wives, drove into downtown Mobile, Alabama where they made a number of different purchases of small articles costing from less than one to about three dollars. Later in the day the group drove to a shopping center in the southwest part of Mobile and McGee went to the Auto-Lec Store to purchase a putty knife for the alleged purpose of scraping bugs off of his automobile windshield. The store had no putty knives so McGee purchased a 1 dollar and 2 cent wall scraper instead and gave Edgar Murphy, the sales clerk, a 20 dollar bill, received his change and left the store. After McGee left the Auto-Lec Store, Murphy thought the 20 dollar bill looked peculiar so he conferred with the store manager, who agreed that the bill was counterfeit and sent Murphy and Steve Leslie, the Assistant Manager, to follow McGee. Murphy saw McGee walk down the shopping center sidewalk and enter the West Department Store, where he purchased a pair of men's undershorts costing 1 dollar and 35 cents, paid for them with a 20 dollar bill, received his change and returned to his car. This bill was later discovered to be counterfeit currency of a common origin with that passed at the Auto-Lec Store. Murphy wrote down the automobile license number and called the Mobile police. Leslie got into his car and went to search for the car containing Seay, McGee and their wives. Upon catching up with the McGee auto, Leslie observed it to be driven recklessly and at high speeds until it turned into another shopping center and parked. Leslie thereupon telephoned this information to the manager of the Auto-Lec Store, who in turn advised the Mobile police. After searching several stores at this second shopping center, policemen from Prichard, Alabama who were assisting the Mobile police in this case, located Seay, McGee and their wives in a drugstore. Leslie made a positive identification of McGee as the man who passed the counterfeit 20 dollar bill at the Auto-Lec Store. Seay, McGee and their wives were thereupon arrested.
 
 
 6
 At the time of the arrests, all of the defendants were out of McGee's car and the car was locked. One of the arresting officers obtained the door key from McGee, unlocked the door, put the gear shift lever in neutral in order to tow the car, relocked the door and returned the key to McGee. The four arrestees were then taken to the police station in a patrol car and the automobile was towed to a local motor company and parked there.
 
 
 7
 Upon their arrival at the police station, the defendants were charged with vagrancy under the provisions of an ordinance of the City of Mobile and were searched, photographed and fingerprinted in the usual manner. One member of the Mobile police force testified that their booking on the vagrancy charge was done solely for the purpose of holding these persons to allow time for the government to file federal counterfeiting charges against them.[3]
 
 
 8
 On April 25, 1968, while Seay and McGee were still incarcerated on the Alabama vagrancy charge, the United States Commissioner issued a warrant to search McGee's vehicle based on an affidavit by treasury agents. The car was searched pursuant to this warrant, certain of the contents were seized and a copy of the warrant and a receipt for the property taken were left in the automobile. On the following day, April 26, 1968, a sworn complaint was filed against Seay and McGee, and they were taken before the Commissioner who ordered them held to answer in the district court. Subsequently, the vagrancy charges were dismissed by Mobile authorities and Seay and McGee were released from their custody. The counterfeiting charges were set down for preliminary examination before the Commissioner on May 14, 1968. However, when the government refused to present any evidence the defendants were discharged.
 
 
 9
 The search of McGee's automobile disclosed it contained numerous newly purchased items of small value, several of which were accompanied by sales slips or markings indicating that the purchases had been made in Mobile, Alabama. Subsequently it was also discovered that two additional counterfeit 20 dollar bills, of common manufacture with those passed at the Auto-Lec and West Department Stores, had been uttered at Eckerd's No. 70 Store and at Western Auto Store in Mobile on April 25, 1968. A can of Raid garden spray, having a retail price of 57 cents, which had been purchased that day at Eckerd's No. 70 Store with a counterfeit 20 dollar bill was found in the search of McGee's car. Seay's right thumbprint was developed on this counterfeit bill by latent fingerprint processes.
 
 
 10
 A Miss Janice Van Horn identified Seay and McGee as the two men who, in her presence, purchased one thousand dollars in counterfeit bills (of the same printing as those passed in Mobile on April 25, 1968) from her boyfriend, Charles Petty, at a truck stop near Baldwyn, Mississippi in early April 1968 for 250 genuine dollars. Both defendants testified and both admitted being in Mobile and together all of the day of April 25, 1968. McGee admitted making 'maybe a half a dozen' purchases including those made in the Auto-Lec and West Department Stores, that day. Seay denied purchasing anything in Mobile on that occasion other than his breakfast and he denied knowing that McGee or the women with them were passing counterfeit money. Both Seay and McGee denied all knowledge of any purchase of counterfeit bills from Charles Petty or any other person in or near Baldwyn, Mississippi.
 
 
 11
 On September 20, 1968, Seay and McGee were indicted by a federal grand jury on charges of uttering counterfeit obligations of the United States. The indictment charged both defendants with three specific instances of uttering counterfeit 20 dollar bills of the same serial and plate number at three different retail establishments in the City of Mobile on April 25, 1968-- the Auto-Lec Store, West Department Store and Eckerd's No. 70. Not guilty pleas were taken on November 25, 1968 and their joint trial followed on February 13, 1969.
 
 
 12
 I. SEAY'S ARREST-- PROBABLE CAUSE?
 
 
 13
 As bases for the contention that the fingerprints taken at the Mobile police station should not have been admitted into evidence in his federal trial for counterfeiting, Seay urged: (1) that the arrest for violating the Mobile vagrancy ordinance was unfounded, since he and McGee in fact were properly dressed and had money and were therefore not vagrants; (2) that the arrests were illegal since they concededly were only used as a device to hold these men until federal agents could file counterfeiting charges. Thus Seay asserts, the fingerprinting violated his Fifth Amendment protection against self-incrimination and constituted an unreasonable search and seizure proscribed by the Fourth Amendment.[4]
 
 
 14
 The record before us discloses that the only fingerprints used for comparison with the latent image taken from the counterfeit bill were those taken on the occasion of Seay's arrest for vagrancy.[5] It therefore becomes critical to determine whether this arrest complied with federal constitutional standards, because if the State arrest was illegal, its sequel-- fingerprints-- would be barred from use in a federal trial. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).
 
 
 15
 No warrant was issued by the judicial authorities of Mobile for the vagrancy arrest of either defendant. Whether a warrantless arrest is constitutionally valid depends upon whether, at the moment the arrest was made, the officers had probable cause to make it. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Kiel v. United States, 406 F.2d 1323 (5th Cir. 1969).
 
 
 16
 A determination of whether probable cause existed for making an arrest does not depend upon whether the defendants were eventually convicted, nor whether they were convicted on the same charge on which they were arrested, but whether the police had probable cause at the time to believe that an offense had been committed. Klingler v. United States, 409 F.2d 299 (8th Cir. 1969), cert. den. 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969). This requires the analyzing court to deal with probabilities. Such probabilities are not technical, but factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, would act. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In applying the standard of probable cause, we determine whether the arresting officers possess knowledge of facts and circumstances gained from reasonably trustworthy sources of information sufficient to justify a man of reasonable caution and prudence in believing that an arrested person has committed or is committing an offense. Knowledge of evidence necessary to establish guilt is not required. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Miller v. United States, 356 F.2d 63, 66, cert. denied 384 U.S. 912, 86 S.Ct. 1357, 16 L.Ed.2d 365 (1966); United States v. Trabucco, 424 F.2d 1311 (5th Cir. 1970).
 
 
 17
 In applying these principles to the case sub judice, we find that Seay and McGee were arrested for vagrancy under a section of the Mobile City Code which in part provided:
 
 
 18
 'The following described persons are vagrants: '(v) Any person who shall engage in any fraudulent scheme, device or trick to obtain money or other valuable thing from others; or any person who aids or assists such trick, device or scheme.' Code of the City of Mobile, 41-65(v)
 
 
 19
 It is not for Seay or McGee to declare himself not guilty of vagrancy in Mobile, Alabama by reason of the fact that he was well-dressed or because he had money in his pocket. The standard for vagrancy is defined in the ordinance adopted by that city, which is not attacked as vague or overbroad.[6] In pertinent part, it declares that one who preys or who aids or assists others in preying on his fellowman by engaging in schemes or tricks to get that man's money or property is a vagrant. This was precisely what the Mobile police had probable cause to believe McGee was doing. However, the record in this case fails to bear out that there was probable cause to arrest Seay as a vagrant or for any other crime. His mere presence in the car and in the restaurant at the second shopping center is not enough.[7]
 
 
 20
 Since Seay was not indicted for purchasing counterfeit securities, the source of the thumbprint obtained for comparison purposes becomes a linchpin for affirmance of his conviction. It was the only direct evidence that he participated in the crime of passing a bogus bill. We cannot say with any assurance that if there was error in proving that Seay's thumbprint was on the bill passed at Eckerd's No. 70 such error was harmless beyond a reasonable doubt.[8] The fact that his thumbprint could have been obtained in connection with his later arrest after grand jury indictment does not obviate the fact that if the print was later taken, this was not shown. Such a 'could have been' cannot invest his earlier vagrancy arrest with probable cause legitimacy.
 
 
 21
 The sequence could become: for want of probable cause the specimen thumbprint is lost-- for want of that print, proof that Seay's print was on the counterfeit bill is lost-- for want of that proof, the conviction is lost-- all for the want of a cause to arrest.
 
 
 22
 On the other hand, no motion was made in advance of trial by Seay's privately retained counsel, who had represented him at least since November 1968, to suppress the fingerprints or photographs as required by Rule 41(e) Fed.R.Crim.P. Birdsell v. United States, 346 F.2d 775 (5th Cir. 1965), cert. denied 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965), Small v. United States, 396 F.2d 764 (5th Cir. 1968). However, because the district judge did proceed to entertain and rule on the motion during trial, it may not be held untimely here. Glisson v. United States, 406 F.2d 423 (5th Cir. 1969). What we cannot know is whether, if a timely motion had been made in advance of trial, the government would have required Seay to submit himself to valid fingerprint procedures in connection with the pending charges against him.
 
 
 23
 Thus, Seay spins too thin a web to warrant our now holding that the conviction which otherwise would be affirmed must be reversed. In this present state of the record, we deem justice to require the remand of this appeal to the district court as to the defendant Seay only, with directions (1) to conduct such further proceedings as may be necessary to determine the state of knowledge possessed by the Mobile police at the time they booked Seay for vagrancy and took his fingerprints, (2) to make an appropriate finding as to whether probable cause existed for the vagrancy arrest of Seay on April 25, 1968, and (3) to supplement the record on this appeal with the record of such additional proceedings and findings.
 
 
 24
 Since the cause must be remanded, we deem it appropriate to comment on a contention raised in the briefs of the parties in this court. The subjective intention of the city police to use Seay's arrest only to hold him until federal officers could bring charges against him under the laws of the United States does not negate the objective validity of the arrest. If a police officer who makes a valid arrest thinks his jurisdiction will not ultimately continue with the processing of the arrest of a person, that thought on his part does not cause the arrest to then become illegal nor the charges to become pretextural or phony.
 
 
 25
 While the arresting officer may control the decision to arrest or refrain from arresting, he does not control the course of the prosecution after arrest. The decision to continue or stop the prosecution was within the province of other municipal officials. Had a decision been made by agents of the Treasury Department not to commence federal proceedings, we have no way of knowing whether the vagrancy charges or State forgery charges would have been pursued by State officials. Just as the best of good intentions cannot gloss over a technical or a fundamental deprivation of procedural or substantive rights, cf. Nesmith v. Alford, 318 F.2d 110, reh. denied 319 F.2d 859 (5th Cir. 1963), cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964), a citizen who does in fact break the law has no right to examine into the subjective intentions of the policeman who arrests and books him so as to invalidate the otherwise proper processes and procedures applied to him. The validity of every arrest must depend upon the objective facts and the law which appertains to the charge upon which the arrest and the consequent forfeiture of liberty is based. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also Klingler v. United States, 409 F.2d 299 (5th Cir. 1969).
 
 
 26
 II. SEARCH OF McGEE'S AUTOMOBILE.
 
 
 27
 A search of McGee's automobile was conducted pursuant to a warrant issued by the United States Commissioner. No challenge is made of the validity of the warrant or of the sufficiency of the underlying affidavit. The challenge is wholly based upon the contention that the automobile-- a 'package of personal effects'-- was, at the time of the search, improperly impounded by the Mobile Police Department; therefore, all of the effects of Seay and McGee which were searched and retained for use as evidence were already the subject of a collusive State-Federal seizure which violated the Fourth Amendment.
 
 
 28
 The answer to this contention is that the automobile and its contents were not shown to have been under legal seizure by the Mobile police in connection with the vagrancy charge lodged against the defendants. Rather, the record shows that at the time that the defendants and their wives were arrested, officers took the key to the automobile only long enough to put the transmission in neutral for towing to a more suitable place for temporary storage and, having done this, they returned the key to McGee. Neither Seay nor McGee undertook to show that any attempt had been made by their wives or friends to obtain the use of the car during any part of the time they remained in the Mobile jail or that its use was denied to anyone.[9] The actions of the police in removing the car from a privately owned shopping center parking lot to a regular place of automobile storage was consistent with the police department's responsibility for safekeeping while its owner was in their custody and was altogether reasonable and was not shown to be a seizure that violated the Fourth Amendment rights of either defendant.[10]
 
 III. DENIAL OF FAIR TRIAL
 
 29
 Lastly, we consider the five points of error McGee alleges deprived him of a fair and speedy trial. First, McGee suggests that the delay from the time of his original arrest and arraignment until the time of indictment by the Grand Jury, approximately five months, deprived him of his right to a speedy trial, and the trial judge should have granted his motion to dismiss the indictment. This challenge must be rejected by virtue of the long standing rule of this court that a delay in the bringing of an indictment, so long as the applicable statute of limitations is still open, does not deprive a defendant of the right to a speedy trial in violation of the sixth amendment. Whatley v. United States, 428 F.2d 806 (5th Cir. 1970); United States v. Grayson, 416 F.2d 1073 (5th Cir. 1969); cf. United States v. Deloney, 389 F.2d 324 (7th Cir. 1968). Also, the record shows no motion for a speedy trial after indictment. See United States v. Grimes, 426 F.2d 706 (5th Cir. 1970).
 
 
 30
 Second, McGee argues that trying him with Seay as a co-defendant resulted in prejudicial error to him. McGee filed a timely motion with the trial court requesting that the trials be severed. The court denied his motion. The grant or denial of severance is a matter within the sound discretion of the trial judge, whose discretion will not be overturned unless there is an affirmative showing, not simply an allegation, of an abuse of discretion and that a miscarriage of justice occurred. Fed.R.Crim.P. 8(b), 14. There is absolutely nothing in the record or McGee's brief to substantiate his allegation. Blachly v. United States, 380 F.2d 665 (5th Cir. 1967); Leach v. United States, 402 F.2d 268 (5th Cir. 1968), cert. denied 393 U.S. 1082, 89 S.Ct. 864, 21 L.Ed.2d 775 (1969).
 
 
 31
 Third, McGee complains that he was deprived of a 'pre-indictment hearing.' Although one circuit has adopted the view that a preliminary examination under the provisions of Fed.R.Crim.P. 5(c) creates some 'right' to pre-trial discovery in criminal cases,[11] there is no positive procedural or constitutional dimension to the 'right'. United States v. Smith, 343 F.2d 847 (6th Cir. 1965). Where, as here, the government is willing to suffer a dismissal of its complaint rather than to proceed with the hearing, the defendant is in no worse position than he would have been if no complaint had ever been filed and the proceedings had been by grand jury indictment alone. See United States v. Grimes, supra.
 
 
 32
 Fourth, as detailed above, the government sponsored a witness who testified that she saw Seay and McGee purchase counterfeit currency from her boyfriend. McGee claims that this testimony was inadmissible and prejudicial because the grand jury indictment contained no count charging the crime of purchasing the counterfeit money.[12] McGee claims that this testimony 'surprised' him and, since the indictment made no mention of the purchase transaction and the government did not proceed with the preliminary examination in this case, he was not informed of the accusation against him as required by the Sixth Amendment.
 
 
 33
 This argument is untenable. The admission of the testimony did not serve to indict or to try either defendant for the offense of purchasing counterfeit currency. This evidence was relevant and properly admitted to prove the crime charged in the indictment. An essential element of the crime of uttering counterfeit currency was knowledge that the bills which were passed were counterfeit. Without such knowledge, there could be no intention to defraud. Since it was incumbent upon the government to prove knowledge, evidence that the defendants purchased bills at less than the face value tended to demonstrate that Seay and McGee acted with the statutorily required mens rea. See United States v. Bland, 432 F.2d 96 (5th Cir. 1970). In Paz v. United States, 387 F.2d 428, 430 (5th Cir. 1967), we stated:
 
 
 34
 'Guilt and knowledge seldom can be shown by direct evidence, and the jury may scrutinize the entire conduct of the defendant at or near the time when the money was passed. United States v. Carlson, 359 F.2d 592 (3rd Cir. 1966). * * * Acquisition of the (counterfeit) bills by the accused at a discount or under other circumstances that would cause him to be suspicious of their genuineness is pertinent. McMillon v. United States, 272 F.2d 170 (5th Cir.), cert. denied 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769 (1961). Hagan v. United States, 295 F. 656 (6th Cir. 1924).'
 
 
 35
 See also United States v. Casey, 431 F.2d 953 (5th Cir. 1970).
 
 
 36
 Finally, McGee charges that the U.S. Attorney made improper remarks in final argument to the jury both by misquoting prior testimony and in commenting on the fact that the defendants had failed to call their wives to testify. The judge carefully instructed the jury that the lawyers' remarks were not evidence and that their verdict was to be governed by proper proof, not argument. Since neither party called the wives to testify we do not know whether the privilege would have been invoked by defendants making them unavailable to the government and entitling it to an instruction that a presumption of unfavorable testimony obtained. Cf. McClanahan v. United States, 230 F.2d 919 (5th Cir. 1956). In any event, the comment that they had not taken the stand was not error. McConnell v. United States, 393 F.2d 404 (5th Cir. 1968).
 
 
 37
 Considered separately and cumulatively, these allegations do not amount to errors which affected the fairness of the trial accorded to McGee.
 
 
 38
 The conviction of Hoyt Jackson McGee is now affirmed and the district court is directed to hold such further proceedings as to Thomas Johnson Seay as required herein.
 
 
 39
 Affirmed in part and remanded in part, with directions.
 
 
 
 [1]
 18 U.S.C.A. 472 (1966) provides:
 'Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.'
 
 
 [2]
 Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)
 
 
 [3]
 His exact testimony was:
 'Q What-- what prompted you as a police officer to charge these people with vagrancy? What grounds did you have to do it?
 'A We booked them to hold them until Mr. Weaver could make his case and file on these bogus twenty dollar bills they had.
 'Q For no other purpose, is that correct?
 'A Yes, sir.
 'Q They-- so far as you knew they had not violated any laws of the City of Mobile.'
 'A No, sir. (R. 395)
 
 
 [4]
 Seay also complains of a photograph which was taken of him at the time of arrest. That photograph was later shown to witnesses before the trial but did not create a critical issue as to proper in court identification of this witness
 
 
 [5]
 Seay and McGee were re-arrested in the fall of 1968 when they were indicted by the federal grand jury but apparently no new fingerprints were taken at that time
 
 
 [6]
 The constitutional validity of the vagrancy ordinance is not critical here. One who passes counterfeit money or who aids and abets such an action would violate both Alabama's forgery statute, Ala. Code tit. 14, 199 (1958), and the federal counterfeiting law, 18 U.S.C.A. 472, supra, n. 1. The municipal police could justify their arrest with probable cause to believe an offense had been committed against either sovereign. Marsh v. United States, 29 F.2d 172 (2d Cir. 1928), cert. denied 279 U.S. 849, 49 S.Ct. 346, 73 L.Ed. 992 (1929); cf. Gullett v. United States, 387 F.2d 307 (8th Cir. 1967)
 
 
 [7]
 In United States v. Joiner, 429 F.2d 489 (5th Cir. 1970), we said:
 'That Joiner associated with Lott was not, standing alone, enough to convict. Mere presence at the scene of the crime, with nothing more, is not evidence that one is an aider or an abettor. To sustain this conviction, the evidence, and the inferences reasonably to be drawn therefrom, had to be such as reasonably to generate a belief beyond a reasonable doubt that Joiner knew that the bank funds were being, or would be, misapplied, that he associated himself with the act, that he participated in it with a desire that it be accomplished, and that he committed some overt act designed to make it a success. Joiner had to share the criminal intent or purpose of Lott and he had to assist him in the accomplishment of that purpose.'
 
 
 [8]
 Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)
 
 
 [9]
 See Mr. Justice White's comments in the last paragraph of Part II of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 419 (1970) as to the continuing mobility of an automobile which is in police custody as a consequence of an arrest of its operator
 
 
 [10]
 Cf. United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970)
 
 
 [11]
 Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965). See also Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F.2d 557 (1967)
 
 
 [12]
 18 U.S.C.A. 473 (1966)