702 P.2d 345

**Frank SANCHEZ, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**STATE of New Mexico, Petitioner,**

v.

**Frank Vincent SANCHEZ, Respondent.**

**Nos. 15810, 15811.**

Supreme Court of New Mexico.

June 26, 1985.

Joseph N. Riggs, III, Albuquerque, for Sanchez.

Paul Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for State of N.M.

## OPINION

FEDERICI, Chief Justice.

Following a jury trial, defendant was convicted of kidnapping, escape and two counts of rape. In a memorandum opinion the Court of Appeals reversed the rape conviction. *State v. Sanchez*, Ct.App. No. 7746 (Filed February 28, 1985). The Court of Appeals held that the trial court improperly restricted the defense's cross-examination of a prosecution witness, depriving defendant of his constitutional right to be confronted with any witnesses against him. The State petitioned this Court for a writ of certiorari (No. 15,811), contending that the Court of Appeals memorandum opinion is incorrect and should be reversed. Defendant also petitioned this Court for a writ of certiorari (No. 15,810), contending that the Court of Appeals was correct in reversing the rape conviction but also should have reversed the kidnapping and escape convictions on the same grounds. The Court of Appeals did not address those convictions in its memorandum opinion.

We affirm the Court of Appeals' reversal of the rape conviction. We also reverse the kidnapping conviction, but we affirm the escape conviction. Defendant is granted a new trial on the rape and kidnapping charges.

The facts are set forth in the Court of Appeals memorandum opinion, which is to be published with this opinion. The witness whose cross-examination is in question was the emergency room physician who had examined the complainant following the alleged kidnapping and rape. After an initial direct examination and voir dire of the doctor the trial court determined that he was qualified to testify as an expert in the field of emergency medicine, and could state his opinion as to whether the complainant had been raped. On direct examination the doctor then testified that in his professional opinion, based on the mental state of the complainant when he examined her, the complainant had been raped. During direct examination the prosecution and the doctor used both the term "diagnosis" and the term "opinion," apparently interchangeably. On cross-examination, the defense sought to question the doctor regarding statements, in publications which the doctor had recognized as reliable, that it is not accepted medical practice to make a diagnosis of rape. The trial court refused to permit this line of questioning. The trial court stated that it had already ruled that

the doctor could give his opinion on whether the complainant was raped, and that it wanted to avoid confusing the jury.

The Court of Appeals held that this restriction of cross-examination denied defendant his right to be confronted with the witnesses against him. The Court of Appeals also held that it was not harmless error because the doctor's testimony was important to the government's case. We agree. The only other witness who testified as to the rape was the complainant. There was no physical evidence of rape. Defendant denied having any sexual intercourse with the complainant.

The Court of Appeals was correct in holding that the trial court's restriction of cross-examination infringed defendant's constitutional right to be confronted with the witnesses against him. U.S. Const. amend. VI, XIV; N.M. Const. art. II, § 14; *Reilly v. Pinkus*, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949). In criminal cases the defense is generally permitted great latitude in cross-examining prosecution witnesses. *E.g., McConnell v. United States*, 393 F.2d 404 (5th Cir.1968). This holds true where the cross-examination concerns the witness' experience and qualifications as an expert. *Id.* Allowing the defense effective cross-examination is especially important where, as in this case, the witness' testimony is central to the government's case. *Id.; United States v. Ayotte*, 741 F.2d 865 (6th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984).

The trial court may, within its discretion, control cross-examination to insure a fair and efficient trial. NMSA 1978, Evid.R. 611(a) (Repl.Pamp.1983); *State v. McCarter*, 93 N.M. 708, 604 P.2d 1242 (1980). In the instant case, however, defendant's "vital" right to effective cross-examination, *Davis v. Alaska*, 415 U.S. 308, 320, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974), outweighed any possible harm that might have resulted from allowing the defense to pursue its questioning. The questions which the defense sought to ask related to the witness' credibility as an expert, and fell within the "learned treatise" ex-

ception to the hearsay rule. NMSA 1978, Evid.R. 803(18) (Repl.Pamp.1983). The purpose of permitting counsel to cross-examine expert witnesses regarding statements in learned treatises is not to establish the truth of those statements, but to test the expert's testimony before the jury. *Reilly v. Pinkus*. Therefore, the question which the defense sought to ask in this case did not conflict with the trial court's ruling that the doctor could state his opinion on whether the complainant was raped. The trial court could cure any confusion of the jury by instructing them that, while it remained their role to determine whether there was a rape, the doctor was qualified to give his opinion. *See* NMSA 1978, Evid.R. 704 (Repl.Pamp.1983).

The error by the trial court was harmful not only with respect to the rape conviction but also with respect to the kidnapping conviction. For error to be considered harmless, there must be:

(1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony.

*State v. Moore*, 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980). *See also State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (Ct.App.), *cert. quashed*, 100 N.M. 53, 665 P.2d 809 (1983). In the instant case, while there may have been evidence to support the kidnapping conviction without reference to the doctor's testimony, we cannot say that the other evidence presented was so disproportionate that the doctor's testimony did not contribute to the kidnapping conviction. *See State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975).

The doctor's corroboration of the allegation that the complainant was raped tended to corroborate the allegation that she was kidnapped. Also, in a case such as

this in which the complainant was not held as a hostage or for ransom, it is necessary, in order to sustain a kidnapping conviction, to show that the defendant intended to hold the victim "to service against the victim's will." NMSA 1978, § 30–4–1(A)(3) (Repl. Pamp.1984); *State v. Clark*, 80 N.M. 340, 455 P.2d 844 (1969). The doctor's testimony regarding rape went directly to this essential element of kidnapping. Uniform Jury Instruction 4.04, which was given in this case, states that " '[h]old for service' includes holding for sexual purposes." NMSA 1978, UJI Crim. 4.04 (Repl.Pamp. 1982). In order to show intent to hold the victim to service it is not necessary to show that the defendant intended to rape the victim. *State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App.), *rev'd in part on other grounds*, 90 N.M. 191, 561 P.2d 464 (1977) (evidence that defendant bound and gagged child and mother, raped mother, and stated that both child and mother were to accompany defendant out of state is sufficient to show intent to hold child to service). In this case, however, we cannot say that the doctor's testimony regarding rape did not contribute to the jury's finding of intent to hold the victim to service. Therefore we must reverse the kidnapping conviction. *State v. Self.*

■ Defendant also contends that the escape conviction should be reversed, but he presents no argument or authorities to support that contention. The doctor's testimony was completely unrelated to the facts surrounding the escape, and did not contribute to the escape conviction. Accordingly, that conviction is affirmed.

We affirm the Court of Appeals in reversing the rape conviction. We reverse the kidnapping conviction. We affirm the escape conviction. The cause is remanded to the trial court for a new trial on the rape and kidnapping charges.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, STOWERS and WALTERS, JJ., concur.

APPENDIX

No. 7746.

Court of Appeals of New Mexico.

Feb. 28, 1985.

**MEMORANDUM OPINION**

HENDLEY, Judge.

Convicted of two counts of second degree criminal sexual penetration, one count of kidnapping, and one count of escape from a peace officer, defendant appeals. His second point, restriction of cross-examination, is dispositive and we reverse the two convictions of criminal sexual penetration. The other convictions are affirmed.

The victim, a student at the University of New Mexico, testified she was forced at knife point into her car, driven to a secluded area, threatened several times, and sexually penetrated twice. Defendant kept mentioning that he would like to see her again. She did not believe that he would let her go if she did not cooperate, so she gave him her telephone number and first name. Defendant drove the victim back to campus.

Defendant testified he was picked up by the victim. She indicated that she knew of a park nearby where they could go have a beer. He took a six-pack of beer from his car and they drove to Kit Carson Park. During the evening, the victim made it obvious that she wanted sexual intercourse, but he was embarrassed and felt that things were going too fast. He told her that he did not think he could have sex with her. He denied that any sexual intercourse occurred.

Dr. Bova, an emergency room physician at Lovelace Medical Center, examined the victim a few hours after the incident. He testified as an expert witness for the state. Dr. Bova was questioned regarding his education. He received his medical degree from Temple University School of Medicine in 1974. He did an internship in emergency medicine at the Medical College of Pennsylvania. He served two years of residency in emergency medicine at the Medical College of Pennsylvania. He is one of

three emergency room physicians in New Mexico who are certified by the Board of Emergency Medicine. Dr. Bova was also questioned regarding his experience with rape victims. He had examined approximately thirty rape victims. He testified as to the process that is gone through when a rape victim presents herself at the emergency room. He had been trained to discern whether the rape victim's story is consistent or inconsistent with the medical findings. On voir dire, defendant sought to examine Dr. Bova on his qualifications to diagnose rape cases and on his training in psychiatry. Defendant read a list of names of articles and books on rape to Dr. Bova. Dr. Bova testified that he had read or seen some of them as references in other articles he had read. After defendant had read twelve names, the trial court limited that type of voir dire on the ground that she did not see the necessity and on the ground that it could go on indefinitely. She instructed defendant to confine his voir dire to Dr. Bova's qualifications as an expert in emergency medicine. Defendant explained to the court that he believed Dr. Bova was going to testify in a number of areas beyond his scope as an emergency room physician, and that defendant was challenging his qualifications to testify beyond the usual areas in which an emergency room physician practices. Defendant informed the court, in an offer of proof, that he believed Dr. Bova was going to testify that on the basis of the victim's behavior he believed she was telling the truth. In Dr. Bova's opinion, based on her perceived mental state, the victim was raped.

Dr. Bova testified that he had taken a medical history from the victim during which she told him about the incident with defendant. He examined her physically from head to toe. Although there was no physical evidence of forced sexual intercourse, he testified that the physical exam was consistent with her story that she had been raped while under a threat, had offered no resistance, and there had been no ejaculation by defendant. The victim was in an emotional crisis. She talked rapidly, was tremulous and excited, sought approval from the doctor for not having resisted, and had an air of being glad to have survived a trying experience. From this, the doctor formed a professional opinion that she had been raped. At another point in his testimony, Dr. Bova stated the examination was consistent with someone who had been sexually assaulted. His opinion was based on his medical findings which were brought out at trial before he stated his opinion. The doctor did not distinguish between his diagnosis and his opinion.

On cross-examination, defense counsel attempted to impeach Dr. Bova by the use of medical journals and books which state that the making of a diagnosis of rape is not accepted medical practice. The issue of whether making a diagnosis of rape is an accepted medical practice goes to whether Dr. Bova arrived at a proper diagnosis after he evaluated the physical and emotional state of the victim. A published medical treatise may be used in cross-examination of an expert witness where the witness establishes the treatise as a reliable authority. NMSA 1978, Evid.R. 803(18) (Repl. Pamp.1983). The trial court refused to permit such impeachment, stating several times that she had already ruled the doctor could give his opinion. The defendant explained to the court that he was attempting to impeach the doctor, and was not at this time questioning her ruling that the doctor could give his opinion.

The accused shall enjoy the right to be confronted with the witnesses against him. N.M. Const. art. II, § 14 (Cum.Supp.1984). The right of confrontation includes the right to cross-examine witnesses. *State v. Martinez*, 95 N.M. 445, 623 P.2d 565 (1981). The primary purposes behind the confrontation clause are that an accused shall have the opportunity to test the recollection and sift the conscience of the witness and to compel the witness to stand face-to-face with the jury so they may judge by his demeanor and manner whether he is worthy of belief. The extent to which cross-examination may be allowed is largely within the discretion of the trial court. *State v.*

*Davis,* 92 N.M. 563, 591 P.2d 1160 (Ct.App. 1979); *State v. Curtis,* 87 N.M. 128, 529 P.2d 1249 (Ct.App.1974).

On cross-examination, a party may go into matters affecting the credibility of the witness. NMSA 1978, Evid.R. 611(b) (Repl. Pamp.1983). The trial court has the right to exercise reasonable control over interrogation of witnesses so as to make the interrogation and presentation effective for ascertainment of the truth, to avoid needless consumption of time, and to protect witnesses from harassment or undue embarrassment. Evid.R. 611(a); *State v. McCarter,* 93 N.M. 708, 604 P.2d 1242 (1980). However, the right of confrontation cannot be so restricted as to wholly deprive the defendant of an opportunity to test the credibility of the witness. *State v. Curtis.* The credibility of a witness may be attacked by any party. NMSA 1978, Evid.R. 607 (Repl.Pamp.1983). The trial court abused its discretion by depriving defendant of an opportunity to test the credibility of this witness.

This error was not harmless. The remainder of the evidence was not greatly disproportionate in comparison to Dr. Bova's unimpeached testimony. *See State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980). This was a swearing match between defendant and the victim. *See State v. Ross,* 88 N.M. 1, 536 P.2d 265 (Ct.App. 1975). It cannot be said as a matter of law that Dr. Bova's testimony did not contribute to the conviction.

The defendant's two criminal sexual penetration convictions are reversed. The other convictions are affirmed.

IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.