1997-NMCA-075

943 P.2d 1052

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Aurelio LOPEZ, Defendant–Appellant.**

**No. 16971.**

Court of Appeals of New Mexico.

June 19, 1997.

Certiorari Granted Aug. 7, 1997.

Tom Udall, Attorney General, Steven S. Suttle, Ass't Attorney General, Albuquerque, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Susan Gibbs, Ass't Appellate Defender, Santa Fe, for Defendant–Appellant.

*OPINION*

PICKARD, Judge.

1. Defendant was convicted of driving under the influence of intoxicating liquor or drugs (DWI), a fourth-degree felony, pursuant to NMSA 1978, Section 66–8–102 (Repl. Pamp.1994) and NMSA 1978, Section 31–18–15 (Repl.Pamp.1994) and failure to carry evidence of financial responsibility pursuant to NMSA 1978, Section 66–5–229(C) (Repl. Pamp.1994). At trial, Defendant contended that he was not the driver of the vehicle. The court admitted, as a statement of identification under Rule 11–801(D)(1)(c) NMRA 1997, a police officer's testimony that Defendant's wife, Clara Lopez, reported on the night of the accident that Defendant had been driving the vehicle.

2. On appeal, Defendant raises five issues challenging the conduct of his trial and imposition of sentence. We reach only one in reversing his DWI conviction: whether the trial court committed reversible error in admitting the alleged out-of-court statement of Clara Lopez about whether Defendant drove the truck away from their home immediately prior to the accident. We hold that the alleged statement was not an identification of a person upon perceiving the person as contemplated by the evidentiary rule. Although the testimony could have been admitted for impeachment purposes under Rule 11–613 NMRA 1997, its substantive admission as identification unfairly prejudiced Defendant. We reverse his felony conviction and affirm his misdemeanor conviction.

*FACTS*

3. On September 20, 1994, a pickup truck registered to Defendant rolled over onto its side on McCormick School Road in Farmington, New Mexico. Defendant was seen at the accident scene by a responding police officer. Officer McDaniel testified that there were two other people at the accident scene. Defendant told the officer that he had not been driving the vehicle. The officer reported that Defendant's eyes were watery and bloodshot, his speech was slurred, and his breath smelled strongly of alcohol. Defendant submitted to a horizontal gaze nystag-

mus test. Based on the results, the officer believed Defendant's blood-alcohol level to be above .10%. A sample of his blood showed a blood-alcohol concentration of .23%. Defendant did not produce evidence of liability insurance at the scene. Defendant was charged with driving under the influence of intoxicating liquor or drugs, fourth or subsequent offense, and failure to carry evidence of financial responsibility.

4. Clara Lopez testified at trial about the evening of the accident. She testified that Defendant and two or three of his friends had been drinking at her home, that Defendant indicated to her that he intended to leave the house, and that they argued as a result. She stated that she was very angry with him and urged him to go to bed. At some point in the evening the group left. Clara Lopez testified that one of the group wanted them to drive Defendant's truck to Denver because it had a new motor. She further testified that she thought that there had been two vehicles in the driveway. Clara Lopez also stated that she did not see who got into which vehicle or who was driving. She testified that she only heard tires spinning and saw the dust and gravel that the vehicles kicked up as they 'pulled out of the driveway. Clara Lopez testified that a short time later Officer Neph Izatt of the Farmington Police Department came to speak to her at her mother's house. Clara Lopez testified that she never told the officer that she had seen her husband drive away or that he had been the sole occupant of the truck. She explained that from where she was reported to have been standing, she would have been unable to see the driveway. After Clara Lopez testified, the State called Officer Izatt. Defendant objected that any testimony from the officer would be hearsay. Out of the hearing of the jury, a tender of the officer's testimony was made and arguments about its admissibility were heard.

5. The State initially listed several possible grounds for admitting the officer's testimony. These were Rule 11–801(D)(1)(a), Rule 11–801(D)(1)(c), Rule 11–609 NMRA 1997 [sic], and Rule 11–613 NMRA 1997. Officer Izatt then stated that after responding to the accident she went to Clara Lopez's mother's house to speak with Clara Lopez. The officer alleged that Clara Lopez told her that she had seen her husband leave in his truck, that he had been driving the truck, and that he had been the sole occupant of the truck. The State began its argument for the admissibility of the officer's testimony under Rule 11–801(D)(1)(a) as a prior inconsistent statement. Defendant successfully argued that the rule was not applicable because it required the prior statement to be given under oath and subject to penalty of perjury.

6. The trial court then reviewed Rule 11–801 and suggested that the evidence might be admissible under Rule 11–801(D)(1)(c), which admits statements of identification of a person after perceiving the person as non-hearsay. Defendant objected that Clara Lopez's alleged inconsistent statements were not introduced to identify him, but to prove that he was the driver and sole occupant of the truck as it left the house immediately prior to the accident. The trial court noted that this testimony was likely to be the only evidence which would place Defendant as the driver of the vehicle. The trial court, citing *State v. Barela*, 97 N.M. 723, 643 P.2d 287 (Ct.App.1982), admitted the testimony over Defendant's continued objection. The State was instructed to limit its questions to this witness to "identification," which the trial court considered to include testimony that Clara Lopez said that she saw Defendant leave in the truck, that she heard the tires spinning and saw the dust and gravel as the truck left the driveway, and that Defendant was the sole occupant of the truck. Officer Izatt then testified before the jury that Clara Lopez "identified her husband as the driver and the sole occupant" of the truck as it drove away.

## DISCUSSION

### Failure to Carry Evidence of Financial Responsibility

7. Defendant briefed only one issue specific to this charge. We can summarily address it. Defendant argues that the State violated the rule of *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1722–23, 90 L.Ed.2d 69 (1986) in executing its peremptory challenges. However, none of

the three challenges violated *Batson.* The first two challenges were adequately justified to the trial court on race-neutral grounds. One juror had a history involving alcohol and drunk driving. The second, the State argued, was more attentive and responsive to defense counsel than to the State. The best evidence of the neutrality of a challenge premised upon an elusive explanation like "inattentiveness" is often the demeanor of the prosecutor, and we defer to the trial court's acceptance of that explanation in this instance. *See State v. Jones,* 123 N.M. 73, 934 P.2d 267, 268–70 (1997). The third challenge was to a Native American juror. *Batson* does not apply to this juror, as he was not of the same race as Defendant, *see Batson,* 476 U.S. at 96, 106 S.Ct. at 1722–23, and Defendant does not raise any issue under *State v. Gonzales,* 111 N.M. 590, 595, 808 P.2d 40, 45 (Ct.App.1991) or *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Therefore we affirm this conviction.

*Driving Under the Influence, Fourth or Subsequent Offense*

■ 8. We review evidentiary rulings of the trial court for abuse of discretion, subject to the proviso that the trial court has no discretion to admit inadmissible evidence. *See State v. Bowman,* 104 N.M. 19, 22, 715 P.2d 467, 470 (Ct.App.1986).

A. *Identification Under Rule 11– 801(D)(1)(c)*

9. An out-of-court statement offered for the truth of the matter asserted is hearsay and is inadmissible evidence unless a specific exception applies. *See State v. Rivera,* 115 N.M. 424, 429, 853 P.2d 126, 131 (Ct.App. 1993). Such statements are inherently unreliable because they were not made under oath or given subject to cross-examination or the penalties of perjury. *See State v. Self,* 88 N.M. 37, 41, 536 P.2d 1093, 1097 (Ct.App. 1975). However, there are some statements so inherently reliable that they are designated to be "nonhearsay," which means that, if admitted, the statements can be used as substantive evidence. *See State v. Casaus,* 121 N.M. 481, 486, 913 P.2d 669, 674 (Ct.App.

1996). A statement of identification of a person upon perceiving the person that is admitted under Rule 11–801(D)(1)(c) is considered nonhearsay evidence.

10. According to the United States Supreme Court, an out-of-court statement of identification of a person is reliable because " 'the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind.' " *Gilbert v. California,* 388 U.S. 263, 273 n. 3, 87 S.Ct. 1951, 1956 n. 3, 18 L.Ed.2d 1178 (1967) (quoting *People v. Gould,* 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865, 867 (1960)). New Mexico Rule 11– 801 is identical to Federal Rule of Evidence 801. Because of the similarities between the rules, federal case law and legislative history are instructive in interpreting the state rule. *See State v. Coyazo,* 123 N.M. 200, 202–03, 936 P.2d 882, 884–85 (Ct.App.1997) (holding that due to similarities between federal and state statutes, federal case law and legislative history were instructive in interpreting the state statute), *cert. denied,* 123 N.M. 168, 936 P.2d 337 (1997). Both rules give preference to out-of-court identifications made closer to the time of perception of a person, before memories fade, witnesses can be influenced, and physical appearances can be altered. As demonstrated by the floor debate on the adoption of the Federal Rule, the primary cases that Congress envisioned being addressed under the rule involved lineups, show-ups, photo arrays, chance encounters, or other circumstances under which a positive identification may become uncertain by the time of trial. *See* 4 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 801(d)(1)(C)[01], at 801–214 to –224 (1996); 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 408 (2d ed. 1994).

■ 11. The instant case involves testimony of a different character from that envisioned by the original drafters of Federal Rule of Evidence 801. *See id.* Identification in its usual sense hinges upon a witness' recognition of a suspect and ability to match the person then to the person now and give assurances that this is the same individual.

Clara Lopez's alleged identification of Defendant goes beyond her recognition of him on the day of the accident as compared to the day of trial.

12. The application of Rule 11–801(D)(1)(c) to the officer's testimony in this case does not comport with the intent of the rule. Clara Lopez's statement as reported by the officer not only went to the identity of Defendant, but also placed him behind the wheel of the vehicle as its sole occupant as it drove away. The establishment of Defendant as the operator of the vehicle was a crucial element of the crime charged, and that element was very much in dispute. The admitted testimony therefore exceeded the scope of the rule.

13. The cases which address issues under Rule 11–801(D)(1)(c) do not aid us in addressing the issue in this case, that is, what information is properly considered "identification." *See id.* Thus, we confront what appears to be an issue of first impression. The Idaho Court of Appeals touched on this question in *State v. Woodbury,* 127 Idaho 757, 905 P.2d 1066, 1070 (Ct.App.1995) (Lansing, J., concurring). While we express no opinion on the precise issue addressed therein (whether a description could be an identification), in her concurring opinion, which we find helpful for our purposes here, Judge Lansing argued that the plain meaning of "identification" should be applied. Therefore, "identification" unambiguously meant "to establish the identity of . . . show or prove the sameness of," *id.* (quoting *Webster's Third International Dictionary* 1123 (2d ed. 1976)), and was used "to mean a circumstance where a single individual has been picked out or specified," *id.* The crux of the definition of "identity" is "sameness." *See id.* Therefore, we believe that testimony admitted as "identification" should be concerned solely with the sameness of the defendant and the individual seen at the crime scene, and not with the supportive details of the crime.

14. It is reasonable to apply a plain meaning interpretation of "identification" where, as here, the circumstances under which out-of-court identifications have been admitted as nonhearsay are relatively consistent from case to case. The identification testimony that can be considered non-hearsay should be narrowly construed to comport with the intent of the rule. *See Barela,* 97 N.M. at 726, 643 P.2d at 290. The testimony should primarily answer the question "Who was it?," not "Where did you see him?" or "What was he doing?" In those cases in which the courts appeared to allow identification evidence to encompass not only the bare identification, but also the gist of the crime, *see, e.g., United States v. O'Malley,* 796 F.2d 891, 898–99 (7th Cir.1986) (identifying the defendant as one of the men who "shook him down"), there was no dispute about the commission of the acts constituting a crime by someone. For example, an out-of-court statement can be used to identify an individual as the assailant when the fact of the assault is not in dispute and the testimony is used solely for identification. But it cannot be used to establish the elements of the assault as well.

15. Here, to the contrary, Clara Lopez denied at trial that she saw anything relating to the gist of the offense—the person driving the car. Had she testified at trial that she saw the offense, but identified a different person, we might have a different case. But she denied being in a position to see anything. Thus, her out-of-court statement was much more than an identification. It more properly was a description of the entire event.

16. As such, it fits more closely the exception for prior inconsistent statements, often used when a key witness recants a prior narrative statement. The circumstances and the substance of the alleged identification in this case are unlike those intended to be admitted under Rule 11–801(D)(1)(c), but rather more closely resemble prior inconsistent statements not under oath. Such statements cannot be admitted as substantive evidence, but may only be used for purposes of impeachment. Therefore, we hold that the trial court improperly admitted Officer Izatt's report of Clara Lopez's testimony as identification. *Cf. Barela,* 97 N.M. at 726, 643 P.2d at 290.

**B.** *Impeachment versus substantive use of testimony*

17. The State initially listed several possible grounds for admitting the officer's testi-

mony. These were Rule 11–801(D)(1)(a), Rule 11–801(D)(1)(c), Rule 11–609 [sic], and Rule 11–613. Under Rule 11–607 NMRA 1997 and Rule 11–613, prior inconsistent statements can be used for the non-hearsay purpose of impeachment. By virtue of the State's choice to first try to admit the testimony under Rule 11–801, it appears that the State primarily intended to use the statement substantively to establish Defendant as the driver of the vehicle. The trial court admitted the testimony for its substantive value under Rule 11–801(D)(1)(c), although it was admissible only for impeachment purposes.

■ 18. We will generally uphold a trial court's decision admitting evidence where it is admissible under any theory. *See State v. Ballinger,* 99 N.M. 707, 709, 663 P.2d 366, 368 (Ct.App.1983), *rev'd on other grounds,* 100 N.M. 583, 673 P.2d 1316 (1984). Further, it is well established that when evidence is admitted for the wrong purpose, there is no error when the defendant does not request a limiting instruction. *See, e.g., State v. Woodward,* 121 N.M. 1, 6, 908 P.2d 231, 236 (1995). However, there are some situations in which it would be unfair for this Court to now change the theory under which the evidence was admitted. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) (holding that the theory used for admitting evidence cannot be changed on appeal if so doing would unfairly prejudice the defendant).

■ 19. In this case, it would have been pointless for Defendant to request a limiting instruction, even though he was entitled to one, because the court had already ruled that the evidence was nonhearsay under Rule 11–801(D)(1)(c). The instruction would have been denied had it been requested. Thus, while the officer's testimony served the impeachment purpose of contradicting Clara Lopez's testimony, it also was used substantively as the only evidence to directly place Defendant as the driver of the truck. Its admission as nonhearsay by the trial court unfairly prejudiced Defendant because the jury was permitted to consider this important evidence for the truth of the matter asserted, and there was little other properly admitted evidence to sustain the verdict.

20. The admission of Officer Izatt's testimony provided the only direct evidence that Defendant was driving the vehicle. Although Defendant was found at the scene and owned the vehicle involved, the theory of the defense accounted for these factors. There were, in fact, other people at the accident scene when police arrived. From that time on, Defendant consistently maintained that he was not driving. Also, Clara Lopez testified that one of Defendant's friends who was at the house on the day of the accident wanted to take Defendant's truck to Colorado because it had a new engine. That a jury could have convicted Defendant without the officer's testimony does not render its admission harmless error. For error to be harmless, there must be:

"(1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so min[u]scule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony."

*Sanchez v. State,* 103 N.M. 25, 27, 702 P.2d 345, 347 (1985) (quoting *State v. Moore,* 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980)).

21. Due to the lack of other direct evidence placing Defendant as the driver of the vehicle, as well as the existence of other explanations for the circumstantial evidence, we are unable to say in this particular case that the improperly admitted testimony did not contribute to the conviction. *See Sanchez,* 103 N.M. at 27, 702 P.2d at 347; *State v. McKelvy,* 91 N.M. 384, 386, 574 P.2d 603, 605 (1978). Because the defense hinged on the credibility of Clara Lopez, the officer's testimony was unfairly prejudicial to Defendant and its admission cannot be considered harmless. *See id.* We hold that the admission of this testimony was an abuse of the trial court's discretion.

22. In sum, we are persuaded that the scope of this particular evidence, when considered in context, went beyond the intent of the evidentiary rule, Rule 11–801(D)(1)(c), that is limited to the admission of an identification as nonhearsay. Instead, this evidence went to prove essential elements of the crime

charged that were very much in dispute. As utilized in this particular trial, the evidence was offered more in the nature of a prior inconsistent statement which, if not made under oath, may not be admitted as substantive evidence for the truth of its content. Given the paucity of other, independent evidence of Defendant's guilt, we cannot say that the admission of this evidence, in this fashion and in this particular context, was harmless and would not have contributed to the verdict.

*CONCLUSION*

23. The felony conviction for driving under the influence of intoxicating liquor or drugs is reversed and remanded for a new trial. Defendant's misdemeanor conviction for failure to carry evidence of financial responsibility is affirmed.

24. **IT IS SO ORDERED.**

FLORES and BOSSON, concur.