1997-NMCA-111

947 P.2d 1059

**D. Paul CHAVEZ, Petitioner–Appellant,**

v.

**CITY OF ALBUQUERQUE,
Respondent–Appellee.**

No. 17587.

Court of Appeals of New Mexico.

Oct. 6, 1997.

**240**

Phillip P. Baca, Kenneth R. Wagner & Associates, P.A., Albuquerque, for Petitioner–Appellant.

Robert M. White, City Attorney, Bruce T. Thompson, Assistant City Attorney, Albuquerque, for Respondent–Appellee.

## OPINION

WECHSLER, Judge.

1. Plaintiff, D. Paul Chavez, appeals the order of the district court upholding the City of Albuquerque Personnel Board's decision terminating his employment. We review the application of the legal residuum rule and the recent decision of the United States Supreme Court in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). We hold that the hearsay evidence upon which the Personnel Board relied is inadmissible and reverse.

*Factual and Procedural Background*

2. Chavez was employed by the City of Albuquerque (the City) as an airfield maintenance operator at the Albuquerque City Airport. A citizen complaint triggered an aviation police investigation of Chavez and other airport employees for illegally selling parking tickets to motorists whose vehicles needed service at the airport parking lot and pocketing the proceeds. The police first questioned Joe Elycio, who was on duty with Ron Gutierrez, the employee who sold the ticket to the complaining citizen. Elycio initially lied, denying that he sold illegal tickets, but later admitted receiving some "hustled" money. Elycio informed the police of Chavez' involvement. The police thereafter spoke with Manuel Sanchez who also initially denied any participation. Subsequently, he went to the police and admitted to knowledge of the activity and to having twice participated. He also implicated Chavez. All four employees, Elycio, Gutierrez, Sanchez, and Chavez, were offered pre-prosecution diversion in lieu of criminal prosecution.

3. Chavez denied any wrongdoing at his grievance hearing. To justify termination, the City only presented the unsworn statements of Elycio and Sanchez as evidence of Chavez' illegal conduct. Over Chavez' objection to the introduction of the statements as inadmissible hearsay, the hearing officer ac-

cepted the evidence. The Personnel Board and the district court upheld the termination.

*Analysis*

### A. The Legal Residuum Rule

■ 4. New Mexico follows the "legal residuum" rule in administrative proceedings in which a person faces the loss of his or her livelihood, a property right. *See Young v. Board of Pharmacy,* 81 N.M. 5, 8–9, 462 P.2d 139, 142–43 (1969); *Anaya v. New Mexico State Personnel Bd.,* 107 N.M. 622, 626, 762 P.2d 909, 913 (Ct.App.1988). Under the rule, "any action depriving [the person] of that property must be based upon such substantial evidence as would support a verdict in a court of law." *Young,* 81 N.M. at 9, 462 P.2d at 143. Although an administrative agency may consider evidence that would not be admissible under the rules of evidence, the legal residuum rule requires that the agency's decision be supported by some evidence that would be admissible under the rules. *Id.* at 8, 462 P.2d at 142; *Anaya,* 107 N.M. at 626, 762 P.2d at 913. Otherwise the agency's decision is not considered to be supported by substantial evidence. *Young,* 81 N.M. at 8, 462 P.2d at 142.

5. Neither Chavez nor the City disputes that the only relevant, probative evidence at the termination hearing was hearsay. Elycio's and Sanchez' statements to the aviation police were the only evidence that implicated Chavez in the ticket-selling scheme. Both Elycio and Sanchez were unavailable to testify at the hearing. If their statements naming Chavez as a participant are inadmissible hearsay, the decision of the hearing officer cannot stand.

### B. Rule 11–804(B)(3)

6. The City argues that relevant portions of the statements are admissible as hearsay exceptions when the declarant is unavailable to testify under Rule 11–804(B)(3), NMRA 1997. That section provides:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

According to the City, the statements of Elycio and Sanchez met the requirements of the rule because they knew that they could be deprived of their jobs and subjected to criminal liability for the acts to which they confessed. Chavez makes no such concession. He asserts that although his former fellow employees faced employment sanctions and criminal prosecution, their statements are not reliable in that, while they are self-inculpatory, they also attempt to shift the blame to him.

■ 7. The purpose of the hearsay rule is to limit the danger that evidence at trial is unreliable. *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 802.02[3] (Joseph M. McLaughlin ed., 2d ed. 1997). Hearsay, by its very nature, is the testimony of a declarant who is not present at trial under oath and not subject to cross-examination. *See* Rule 11–801(C), NMRA 1997. Without these indicia of trustworthiness, the job of the trier of fact to ascertain the truth is more difficult. *See id.*

■ 8. Exceptions to the hearsay rule are based on guarantees of reliability and trustworthiness of particular circumstances which the rules of evidence accept as substitutes for the declarant's testimony at trial. *See State v. Self,* 88 N.M. 37, 41, 536 P.2d 1093, 1097 (Ct.App.1975). The basis for the statement against interest exception is that people do not make statements that will hurt them unless the statement is true. *See* Rule 11–804(B)(3). The trap in the application of this exception is that a declarant may have reasons other than speaking the truth in making a statement against interest. *See State v. Huerta,* 104 N.M. 340, 342–43, 721 P.2d 408, 410–11 (Ct.App.1986); *Self,* 88 N.M. at 41, 536 P.2d at 1097. Our court, therefore, applies the exception with care.

## C. *Williamson v. United States*

9. While the case on appeal was pending, the United States Supreme Court clarified the application of Rule 804(b)(3) of the Federal Rules of Evidence, the identical counterpart of the New Mexico rule, in *Williamson,* 512 U.S. at 599–600, 114 S.Ct. at 2434–2435. We adopt the reasoning in *Williamson* in our interpretation of New Mexico's Rule 11–804(B)(3).

10. In *Williamson,* the authorities questioned Harris, the declarant, after his arrest for possession of cocaine. Harris said that he had received the cocaine from an acquaintance of Williamson and was to leave it in a dumpster for Williamson to pick up. 512 U.S. at 596, 114 S.Ct. at 2433. He later recanted, telling the agent that he was transporting the cocaine for Williamson who was travelling in front of him in a separate car. *See id.* at 596–97, 114 S.Ct. at 2433–34. Harris refused to testify at Williamson's trial, and his statement was introduced under Federal Rule of Evidence 804(b)(3). *See Williamson,* 512 U.S. at 597–98, 114 S.Ct. at 2433–34.

11. Despite the self-inculpatory aspects of Harris' statement, the Supreme Court ruled that the statements of Harris about Williamson's involvement which were collateral to Harris' self-inculpatory statement were not admissible even though they were made as part of a broader narrative that was generally self-inculpatory. *See id.* at 599–601, 607, 114 S.Ct. at 2434–2436, 2438 (Ginsburg, J., concurring). It declined to focus on Harris' complete confession which contained both self-inculpatory and non-self-inculpatory parts, reasoning that only the individual self-inculpatory declarations, not the entire statement or confession, are governed by the reliability principle underlying the Rules that people will not make self-inculpatory statements unless they believe them to be true. *See id.* at 599–601, 114 S.Ct. at 2434–36. The Court did not want to take the risk that the reliability of a statement against interest would be diminished by the opportunity for the declarant to interpose a self-exculpatory remark. Noting that the declarant can be especially persuasive when mixing self-exculpatory falsehood, the types of false statements people are most likely to make, with self-inculpatory truth, the Court stated that the mere proximity of the two types of statements "does not increase the plausibility of the self-exculpatory statements." *Id.* at 600, 114 S.Ct. at 2435.

## D. *Application of Williamson*

12. We view the case on appeal in a similar fashion. Elycio and Sanchez initially did not acknowledge any involvement in the ticket-selling activities. In a later statement to police, they spoke at length of the activities of others and less of those of themselves. Those declarations implicating others which are part of the overall statement but which are not self-inculpatory in and of themselves, do not have the guarantee of trustworthiness necessary to support their being treated any differently from other hearsay. *See id.*

13. The City argues that the references to Chavez by Elycio and Sanchez when confessing to the criminal incidents were part of a single inculpatory statement because the scheme by necessity required those working together to "participate or at least have knowledge of what is going on." Although we agree that the scheme may have that characteristic, particularly when one worker obtains the money from a motorist and shares it with another worker, we do not perceive any difference between such a situation and a conspiracy such as that in *Williamson,* when Harris and Williamson were transporting drugs together.

14. The essential problem is that when the declarant speaks to law enforcement, the declarant may well be disposed to downplay the declarant's involvement at the expense of the others to further the declarant's best interest. The statements of Elycio and Sanchez illustrate this point. When specifically asked about his involvement, Elycio said that he "got maybe a dollar or two," while talking extensively about the activities of Chavez agreeing with the police that Chavez was the "little leader." Sanchez spoke similarly of Chavez and stated that as to himself, at first he "didn't know what was going on," and, "I've done it twice."

15. While these statements may in actuality be true, they demonstrate the dangers of admitting any non-self-inculpatory statements of an out-of-court declarant. They can be viewed as shifting the blame, and the fact finder is unable to observe the declarant's testimony to make the usual determinations about credibility that are necessary to make conclusions about whether the declarant is seeking to shift the blame or tell the truth. Because the declarants, Elycio and Sanchez, may have believed that they would benefit, either in the way that they would be handled in the criminal prosecution or in their employer's treatment of their wrongdoing, their collateral statements are not necessarily of the type that would not be made unless true. *See id.* at 604, 114 S.Ct. at 2437 ("A reasonable person ... might even think that implicating someone else would decrease his practical exposure to criminal liability."). We note that Justice Ginsburg, writing for four members of the Court concurring in *Williamson,* did not believe that even Harris' self-inculpatory statements about himself in *Williamson* were admissible because he provided only "marginal or cumulative" evidence of his guilty involvement and gave the appearance of "striving mightily to shift principal responsibility to someone else." *Id.* at 609, 114 S.Ct. at 2439–40.

### E. *Inherent Reliability*

16. We do not agree with the City that the statements were inherently reliable. Even though Elycio and Sanchez were not in custody, they did not know how they would be treated by either the police or the City. There is no evidence that either Elycio or Sanchez believed that they could not keep their jobs if they were found to be ringleaders in the illegal activity.

17. Although it is favorable that Elycio and Sanchez made appointments to speak with the police with no promise of immunity, this fact alone does not show that their motivations were merely to tell the truth without advancing their own interests. Not only did both declarants change their position from their original statements when later talking to the police, they both were aware that others had spoken to the police,

and each was concerned about protecting himself. Indeed, Elycio specifically stated that he was concerned that others would try to save themselves by getting him more involved than he was and by pointing fingers.

### F. *Corroboration*

18. The City further contends that if the Elycio and Sanchez statements are exculpatory, they are admissible under Rule 11–804(B)(3) because they are corroborated by other hearsay statements. We do not agree.

19. First, the City misreads the last sentence of Rule 11–804(B)(3) which states, "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." The sentence pertains only to statements exculpating an accused, not the declarant. Additionally, by the nature of the "legal residuum" rule, inadmissible hearsay is not made admissible because it is corroborated by other inadmissible hearsay. *See Young,* 81 N.M. at 8–9, 462 P.2d at 142–43. Nor are the statements saved by Rule 11–804(B)(5), the catchall hearsay exception, because that exception is designed for statements not specifically covered by other hearsay exceptions, such as a statement against interest, which fails to qualify to be admitted into evidence. *See State v. Barela,* 97 N.M. 723, 726, 643 P.2d 287, 290 (Ct.App.1982) (catchall exception does not apply to "hearsay which almost, but not quite, fits another specific exception").

20. Rule 11–804(B)(3) is designed to except from the hearsay rule statements of the declarant which are contrary to declarant's physical or criminal best interest. To the extent that a statement extends beyond self-inculpatory remarks, the statement is considered collateral to the essential statement. *See Williamson,* 512 U.S. at 600–01, 114 S.Ct. at 2435–36.

### Conclusion

21. Based on *Williamson,* we hold that the Elycio and Sanchez statements would not be admissible under Rule 804(B)(3) and apply

the legal residuum rule. We reverse the ruling of the district court.

22. IT IS SO ORDERED.

ALARID and BOSSON, JJ., concur.