1998-NMSC-052

971 P.2d 1267

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jerry TORRES, Defendant–Appellant.**

No. 24,000.

Supreme Court of New Mexico.

Dec. 3, 1998.

Phyllis H. Subin, Chief Public Defender, Sara T. Harmon, Assistant Appellate Defender, Santa Fe, for appellant.

Hon. Tom Udall, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for appellee.

## OPINION

SERNA, J.

{1} Defendant Jerry Torres appeals his convictions of first degree depraved-mind murder, *see* NMSA 1978, § 30–2–1(A)(3) (1994), aggravated battery with a firearm (two counts), *see* NMSA 1978, § 30–3–5(C) (1969), aggravated assault with a firearm (three counts), *see* NMSA 1978, § 30–3–2(A) (1963), and shooting at a dwelling or occupied building, *see* NMSA 1978, § 30–3–8(A) (1993), each of which was obtained following a jury trial. Defendant Torres contends on appeal that the trial court erred in admitting the out-of-court statement of a prosecution witness. We affirm.

## I. Facts

{2} On the night of December 31, 1995, Defendant Torres attended a New Year's Eve party (the South Spruce party) in Roswell, New Mexico. Sometime before midnight, occupants of a passing car fired several gunshots in the direction of the South Spruce party. Shortly thereafter, several individuals from the South Spruce party drove to another party (the West Deming party) several blocks away, and two people, one with a shotgun and one with a nine-millimeter pistol, fired into a crowd standing in the front yard. The latter shooting resulted in the death of Robert Bonilla and injuries to Elizabeth Galindo and Billy Ray Castillo. Police later learned that a nine-millimeter gun caused the death and the injuries to these individuals. The State accused Defendant Torres of firing the nine-millimeter gun into the crowd and charged him with, inter alia, depraved-mind murder.

{3} At trial, the State introduced the testimony of several witnesses from the West Deming party. The witnesses identified the car and described the shooting, testifying that one of the assailants yelled, "Westside," which was allegedly a gang reference. The witnesses, however, were unable to identify the assailants. The State also introduced the testimony of Russell Lueras. Lueras testified that he attended the South Spruce party, which he described as being a Westside gang party and which was held at Jimmy Barela's house. At the time of the first shooting, Defendant Torres, Lueras, Earsley Chico Barnett, and Jimmy Barela were standing outside and heard the gunshots. After determining that the bullets had hit an acquaintance's van, Lueras shined the lights of his car on the van to get a closer look. At that time, unidentified individuals in a car drove by to tell them where the other car had gone. After Defendant Torres and Chico Barnett got into his car, Lueras then drove to the West Deming party. Lueras testified that, when he stopped across the street from the party, Defendant Torres exited the driver's side door from the backseat, with Lueras

leaning forward, and Chico Barnett exited the passenger side. Lueras testified that, even though he was armed, he remained in the car because another car in front of him had its lights shining into his car and made him nervous. A few seconds after Defendant Torres and Chico Barnett got out of the car, Lueras heard several gunshots. He testified that he did not see who was firing or what type of gun Defendant Torres or Chico Barnett had at the time. However, Lueras testified that, upon returning to the South Spruce party, he saw Chico Barnett get out of his car holding a shotgun and Defendant Torres holding a nine-millimeter gun.

{4} The State also called Chico Barnett to testify regarding the shooting at the West Deming party. At the time he testified, Barnett had already pleaded guilty to two counts of aggravated battery, one count of aggravated assault, and one count of shooting at a dwelling in connection with the shooting at the West Deming party and had been sentenced to twelve years imprisonment. Barnett testified that he had no agreement with the State for his sentencing or in return for his testimony against Defendant Torres. He testified that he attended the party at South Spruce, that he got into a car with other people, and that they then drove to the West Deming party. Barnett also testified that he had a shotgun and that he fired the shotgun one time at the West Deming party. However, when the prosecution asked whose car it was, who was driving, who else was in the car, whether Defendant Torres had been in the car, and whether anyone else had fired a gun, Barnett repeatedly responded that he did not remember.

{5} The State attempted to refresh Barnett's memory by showing him a transcript of an audio recording of his statement to the police made two days after the shooting and eventually, outside the presence of the jury, by playing the tape for him. Barnett testified that he gave the statement to the police, but he did not remember more detail about the shooting even after hearing the statement. After this failed attempt at refreshing Barnett's memory, the State sought to introduce the recording into evidence as a statement against Barnett's penal interest. *See*

*generally* Rule 11–804(B)(3) NMRA 1998 (providing that statements against penal interests are not excluded by the hearsay rule if the witness is unavailable).

{6} In his statement to the police, Barnett gave a more detailed account of the shooting than he did at trial. He told the police that, while he was at the South Spruce party, a small white car drove past and someone inside the car fired a gun, hitting a nearby van. After someone ascertained that the car had gone to the West Deming party, Barnett and Defendant Torres got into Lueras's car, and all three of them drove to the West Deming party. Barnett stated that he was sitting in the passenger seat and that Defendant Torres was sitting in the backseat. Once they arrived at the West Deming party, Defendant Torres and Barnett got out of the car, with Barnett going around the back and Defendant Torres exiting the driver's side, which faced the party. Barnett told the police that he had a shotgun, which he described in some detail, and that he fired the shotgun one time into a crowd of about fifteen or twenty people outside at the party. He also told the police that Defendant Torres yelled, "Westside," and then fired a nine millimeter several times into the crowd. Finally, he told police that he did not learn that someone had been hit by the gunshots until hearing it on the news that night or the next day.

{7} Before introducing the recorded statement into evidence, the State offered the testimony of Detective John Wayne Davis, who had been present for Barnett's statement. Detective Davis testified that he issued Miranda warnings to Barnett and then took his statement. He identified the State's exhibit as the tape of the interview. He also testified that the police had not offered any leniency toward Barnett in exchange for his statement. He further testified that Barnett was not told which weapon had killed Bonilla and that the type of weapon producing the fatal shot had not been publicized at the time of the statement.

{8} Defendant Torres's counsel objected to the admission of the audio recording on the grounds that it violated his right to cross-examine the witness, that the statement

lacked sufficient reliability because it shifted blame to Defendant Torres, and that, because of his presence at trial, the witness was not unavailable as required by Rule 11–804(B). Defendant Torres contended that, even if Barnett did not know the type of weapon that had produced the fatal shot, Barnett would have known that more shots were fired from the nine-millimeter gun. As a result, Defendant Torres argued, Barnett attempted to shift blame by saying that Defendant Torres fired the nine millimeter, relying on the higher probability that a nine-millimeter bullet killed Bonilla. The trial court concluded that Barnett was unavailable, *see* Rule 11–804(A)(3) (defining "unavailability" as including situations in which the declarant "testifies to a lack of memory of the subject matter of the declarant's statement"), and, relying on *State v. Sanchez,* 112 N.M. 59, 62–65, 811 P.2d 92, 95–98 (Ct.App. 1991), that admission of the recorded statement did not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. As the sole ground of his appeal, Defendant Torres attacks this ruling of the trial court on both evidentiary and constitutional grounds.

## II. Statements Against Penal Interests

{9} Torres contends that the trial court erroneously admitted Barnett's statement under Rule 11–804(B)(3). Specifically, he argues that Barnett's statement was not genuinely against his penal interest because it shifted blame from Barnett to Torres.[1] We disagree.

{10} Rule 11–804(B)(3) provides that a statement is not excluded by the hearsay rule

if the declarant is unavailable as a witness ... [and the] statement ... was at the time of its making so far contrary to the declarant's pecuniary or proprietary inter-

est, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Torres urges this Court to follow the United States Supreme Court's analysis of Rule 804(b)(3) of the Federal Rules of Evidence in *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

{11} In *Williamson,* the Court reviewed the admissibility of a statement by a participant in a crime, made while in the custody of law enforcement officials following the declarant's arrest, which described the participant's and the defendant's respective involvement in the crime. 512 U.S. at 596–97, 114 S.Ct. 2431. The Court first determined that the word "statement" in federal Rule 804(b)(3) did not mean an extended narrative but, instead, a single declaration. *Williamson,* 512 U.S. at 599, 114 S.Ct. 2431. Further, the Court determined that the rule "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at 600–01, 114 S.Ct. 2431. The Court reached this decision based on the fact that "[o]ne of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature ." *Id.* at 599–600, 114 S.Ct. 2431. The Court emphasized that "[s]elf-exculpatory statements are exactly the ones which people are most likely to make even when they are false" and that even collateral statements that are non-self-exculpatory lack sufficient reliability to warrant exception from the hearsay rule. *Id.* at 600, 114 S.Ct. 2431. As a result, the Court concluded that there must be a statement-by-statement inquiry to determine, utilizing the text of the rule, whether " 'a reasonable

---

1. The State contends on appeal that Torres failed to preserve this argument in the trial court. Torres objected to the admission of Barnett's statement on hearsay grounds. He asserted that Barnett's statement lacked sufficient indicia of reliability, due to the allegation that Barnett attempted to shift blame to Torres, and interfered with his right to cross-examine the witness. Even though these arguments were made within the context of a constitutional discussion, we believe the general hearsay objection and the basis for Torres's argument fairly invoked a ruling by the trial court concerning whether the statement was genuinely against Barnett's penal interest. *See* Rule 12–216(A) NMRA 1998 (setting out the requirements for preserving an argument for appeal).

person in the declarant's position would not have made the statement unless believing it to be true.' " *Id.* at 603–04, 114 S.Ct. 2431 (quoting Fed.R.Evid. 804(b)(3)).

{12} Of course, we are not bound in our interpretation of our Rules of Evidence by the United States Supreme Court's interpretation of analogous provisions in the Federal Rules of Evidence. At least three states have chosen to interpret their respective rules of evidence providing for the admission of out-of-court statements against penal interests differently than the Supreme Court in *Williamson. See People v. Newton,* 966 P.2d 563, 577–79 (Colo.1998); *State v. Julian,* No. C–970538, 1998 WL 636975, at *4–5 (Ohio Ct.App. Sept. 18, 1998); *Chandler v. Commonwealth,* 249 Va. 270, 455 S.E.2d 219, 224–25 (1995). In *Newton,* the Supreme Court of Colorado reviewed *Williamson* and determined that it was inconsistent with Colorado's incorporation of the common law into its rules of evidence. *Newton,* 966 P.2d at 567. In addition, the court concluded that the requirement in *Williamson* of "severing collaterally neutral statements from each precise self-inculpatory remark deprives the jury of important context surrounding that self-inculpatory remark." *Id.* "[T]he surgical precision called for by Williamson is highly artificial and nearly impossible to apply." *Id.* Finally, the court noted that "a narrow interpretation of the rule would apply equally to statements offered by a defendant to exculpate the defendant ... [,] thereby making it more difficult for a defendant to present relevant evidence supporting a theory of non-involvement in the alleged crime." *Id.* As a result, the court "delineate[d] a broader approach to admitting statements against penal interest ... than the Supreme Court's interpretation" in *Williamson,* under which

> a narrative's precise statement against penal interest and related, collaterally neutral statements are admissible subject to two limitations: 1) the trial court should exclude statements that are so self-serving as to be unreliable and 2) if the trial court determines that the declarant had a significant motivation to curry favorable treatment, then the entire narrative is inadmissible.

*Id.* at 572. Similarly, both the Supreme Court of Virginia and the Ohio Court of Appeals have declined to adopt the statement-by-statement analysis articulated in *Williamson. See Chandler,* 455 S.E.2d at 225 ("*Williamson* ... concerned the interpretation of the Federal Rules of Evidence, not applicable here."); *Julian,* 1998 WL 636975, at *4 (affirming the admission of a narrative against penal interest due to the "overall incriminating nature of [the declarant's] statements to the police").

{13} Despite the fact that *Williamson* is not controlling in our analysis of Rule 11–804(B)(3), New Mexico courts have found the United States Supreme Court's interpretation of the Federal Rules of Evidence to be instructive in the interpretation of identical provisions in our Rules of Evidence. *See e.g., State v. Lopez,* 1997–NMCA–075, ¶ 10, 123 N.M. 599, 943 P.2d 1052, *cert. quashed,* 124 N.M. 590, 953 P.2d 1088 (1997). In fact, the Court of Appeals, interpreting Rule 11–804(B)(3), recently adopted the *Williamson* analysis. *See Chavez v. City of Albuquerque,* 1997–NMCA–111, ¶ 9, 124 N.M. 239, 947 P.2d 1059. Although we agree with other jurisdictions that the *Williamson* analysis contains some practical difficulties, we believe that *Williamson* supplies a framework that more closely fulfills the purposes of Rule 11–804(B)(3), and we join the Court of Appeals in adopting *Williamson* for the interpretation of New Mexico law.

{14} In *Williamson,* the Court held that collateral statements are not admissible as statements against penal interest under federal Rule 804(b)(3). *See* 512 U.S. at 600–01, 114 S.Ct. 2431. As the Court ultimately concluded in *Williamson,* we believe the determinative inquiry under Rule 11–804(B)(3) must be the text of the rule itself: whether the statement is so far contrary to the declarant's penal interest that "a reasonable person in the declarant's position would not have made the statement unless believing it to be true." We agree with the United States Supreme Court that the reliability of declarations against interest is best secured by a statement-by-statement analysis of the declarant's narrative. Nonetheless, even though some courts have interpreted

*Williamson* narrowly, we believe that *Williamson* does not stand for the proposition that all narratives containing statements against penal interest must be dissected in such a way that they lose any contextual meaning. *See Williamson,* 512 U.S. at 603, 114 S.Ct. 2431 ("[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context."). The Court, in fact, specifically limited its holding with respect to facially neutral statements.

> Even statements that are on their face neutral may actually be against the declarant's interest. "I hid the gun in Joe's apartment" may not be a confession of a crime; but if it is likely to help the police find the murder weapon, then it is certainly self-inculpatory. "Sam and I went to Joe's house" might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy. And other statements that give the police significant details about the crime may also, depending on the situation, be against the declarant's interest.

*Id.* We believe this language in *Williamson* clarifies that plainly self-inculpatory remarks need not be introduced in the absence of necessary context. Under Rule 11–804(B)(3), we conclude that facially-neutral but contextually-incriminating details may be admitted if a reasonable person in the declarant's position would not have revealed them unless believing them to be true due to their strong tendency to subject the declarant to criminal liability.

{15} Within this analytical framework, we turn to the trial court's admission of Barnett's statement under Rule 11–804(B)(3). As a general matter, we review a trial court's admission of evidence under an exception to the hearsay rule only for an abuse of discretion. *State v. Ross,* 1996–NMSC–031, 122 N.M. 15, 20, 919 P.2d 1080, 1085; *State v. Johnson,* 99 N.M. 682, 687, 662 P.2d 1349, 1354 (1983). Nonetheless, we note that there has been some controversy in other jurisdictions regarding the proper standard of review for the admission of statements against penal interest. *See Crespin v.*

*New Mexico,* 144 F.3d 641, 651 (10th Cir.) (Tacha, J., concurring) ("Whether the penal interest issue is one of fact—and therefore entitled to a presumption of correctness—or law is a close question."), *cert. denied,* — U.S. ——, 119 S.Ct. 378, 142 L.Ed.2d 313 (1998). Many courts have treated statements against penal interests under the abuse of discretion standard of review applicable to the admissibility of evidence generally. *See, e.g., United States v. Beydler,* 120 F.3d 985, 987 (9th Cir.1997). By contrast, other courts have concluded that the determination whether a statement is actually against a penal interest represents a question of law reviewable de novo. *See, e.g., United States v. Costa,* 31 F.3d 1073, 1077 (11th Cir.1994). Because the analysis regarding statements against penal interests involves a fact-intensive inquiry that "can·only be answered in light of all the surrounding circumstances," *Williamson,* 512 U.S. at 604, 114 S.Ct. 2431, we see nothing sufficiently unique about Rule 11–804(B)(3) to convince us to depart from the deferential standard of review applicable to other exceptions to the hearsay rule. *See State v. Attaway,* 117 N.M. 141, 144, 870 P.2d 103, 106 (1994) (" 'If the concerns of judicial administration—efficiency, accuracy, and precedential weight—make it more appropriate for a district judge to determine whether the established facts fall within the relevant legal definition, we should subject his [or her] determination to deferential, clearly erroneous review.' " (quoting *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.1984))). We therefore review the trial court's admission of Barnett's statement for an abuse of the trial court's discretion.

{16} Torres does not argue on appeal that Barnett was not unavailable as that term is defined in Rule 11–804(B)(3), so we deem that argument to be abandoned. *See State ex rel. Human Servs. Dep't v. Staples (In re Doe),* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (stating that courts should not consider arguments not raised by the parties); *cf. State v. Ramos,* 115 N.M. 718, 720, 858 P.2d 94, 96 (Ct.App.1993) ("Issues raised in the docketing statement but not briefed are deemed abandoned."). We

must determine, then, whether the trial court erred in concluding that Barnett's statements were so contrary to his penal interests that a reasonable person would not have made them unless believing them to be true. Torres argues that Barnett's statement contains both neutral and self-exculpatory statements that are inadmissible because Barnett was attempting to shift blame to Torres. For example, Torres highlights Barnett's statement that Torres fired the nine-millimeter gun, as well as Barnett's description of Torres's actions during the shooting, as either self-exculpatory or collateral to his self-inculpatory remarks. We disagree.

{17} Barnett told the police that he got into a car with two other individuals, that he was armed with a loaded weapon, that he had the intention of shooting his gun once he got to the West Deming party, and that he and Torres fired into the crowd in unison. These statements to the police could have subjected Barnett to a number of criminal offenses, including shooting at an occupied building, see § 30–3–8(A), aggravated battery, see § 30–3–5(C), aggravated assault, see § 30–3–2(A), and conspiracy, see NMSA 1978, § 30–28–2 (1979). In addition, the degree of detail included in Barnett's statement, including the identity of his co-conspirators, would significantly aid law enforcement officials in securing criminal liability. In fact, Barnett ultimately pleaded guilty to two counts of aggravated battery, one count of aggravated assault, and one count of shooting at an occupied building. Although Torres argues that Barnett's statement can be seen as exculpating himself from murder charges, we believe a closer inspection of Barnett's statements describing the concerted actions of him and Torres reveals that Barnett actually inculpated himself for a charge of depraved-mind murder, either as a principal or under a theory of accessory liability, regardless of which weapon was responsible for the killing. See State v. Baca, 1997–NMSC–059, ¶ 15, 124 N.M. 333, 950 P.2d 776 (describing accessory liability for depraved-mind murder as helping, encouraging, or causing another to commit an act greatly dangerous to the lives of others indicating a depraved mind without regard for human life, in com-

bination with a shared purpose or design between the principal and the accessory).

{18} Torres points out that, when asked if he had thought about talking to someone after learning that people at the party had been shot, Barnett responded, "I kinda wanted to but I was, I didn't know if I had hit someone or if [Torres] had hit someone. So I didn't really want to say nothing." This statement, Torres argues, could be interpreted to mean that Barnett had a subjective belief that the level of criminal liability would depend on which gun produced the fatal shot. While we agree that subjective beliefs are relevant in evaluating reliability and admissibility under Rule 11–804(B)(3), see 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 804.06[4][d][i], at 804–53 (Joseph M. McLaughlin ed., 2d ed.1998), there is no indication in the record that Barnett decided to give his statement because he had learned of the type of gun responsible for the shooting in a way that would allow him to shift blame. In fact, the record supports the conclusion that Barnett did not have that information at the time he spoke to police. Barnett's statement indicates that he was originally reluctant to initiate discussions with the authorities for fear of criminal liability, and in fact, he did not give his statement until the police approached him. Additionally, Detective Davis testified that the police did not in any way offer leniency to Barnett for his statement, which Barnett supplemented by testifying that his trial testimony was not the subject of any agreement with the State. See State v. Huerta, 104 N.M. 340, 342–43, 721 P.2d 408, 410–11 (Ct.App.1986) (discussing the potential for unreliability if a declarant makes a superficially self-inculpatory remark in order to curry favor with authorities), limited on other grounds by State v. Gutierrez, 119 N.M. 658, 662, 894 P.2d 1014, 1018 (Ct.App.1995); cf. Newton, 966 P.2d at 571 (stating that an entire narrative is inadmissible if the declarant has a significant motive to curry favorable treatment with authorities). Detective Davis also testified that he had given Miranda warnings to Barnett. Cf. State v. Sanchez, 112 N.M. 59, 64, 811 P.2d 92, 97

(Ct.App.1991) (relying on Miranda warnings and the declarant's indication that there was no offer of leniency in exchange for his statement in concluding that the statement was not given in order to curry favor with police). Finally, Detective Davis testified that the type of weapon responsible for the killing had not been released to the media or related to Barnett. When viewed in light of all of the circumstances surrounding Barnett's statement, we believe the record supports a conclusion that, at the time he made his statement, Barnett believed that he was incriminating himself and Torres equally for the shooting. We reject Torres's speculative assertion that Barnett attempted to shift blame by claiming he, Barnett, fired the gun that produced fewer bullets; a reasonable person would recognize that a single shotgun blast could likely be responsible for the death. Thus, we do not believe that the trial court acted in an irrational manner in concluding that Barnett did not attempt to shift blame to Torres.

{19} A careful examination of the narrative Barnett gave police demonstrates that each statement could be used to prove the necessary elements and provide the necessary context in securing his criminal liability for depraved-mind murder and other crimes in connection with the shooting at the West Deming party. *Cf. Newton*, 966 P.2d at 579 (relying on accessory liability as demonstrating that a statement is against penal interest); *Chandler*, 455 S.E.2d at 225 (relying on the fact that the declarant's statements demonstrated "knowledge of and complicity in the criminal act and exposed [the declarant] to liability as an accessory to the crimes"). We believe that reasonable persons in Barnett's position would not have subjected themselves to such severe criminal liability unless believing each of the statements to be true. Therefore, we conclude that the trial court did not abuse its discretion in admitting the statements.

### III. Right of Confrontation

{20} Torres also contends that the admission of Barnett's out-of-court statement violated his right of confrontation. The United States Constitution and the New Mexico Constitution provide that criminal defendants have a right "to be confronted with the witnesses against" them. U.S. Const. amend. VI;[2] N.M. Const. art. II, § 14. "The issue of whether admission of hearsay evidence violates a defendant's rights under the Confrontation Clause is a question of law" subject to de novo review. *Ross*, 122 N.M. at 22, 919 P.2d at 1087.

{21} "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him [or her], and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1986) (plurality opinion). Because Barnett testified at trial, there is no question that Torres's right to face Barnett was sufficiently satisfied. Torres argues, however, that his right to cross-examine Barnett was violated because Barnett's lack of memory made any attempt at cross-examination fruitless. We disagree.

{22} The United States Supreme Court has made it clear that, under the Sixth Amendment, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). In *California v. Green*, 399 U.S. 149, 153–64, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the United States Supreme Court evaluated under the Confrontation Clause the admission of a witness's prior statement incriminating the accused following the witness's inability to remember details about events discussed in the prior statement. The Court held that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.* at 158, 90 S.Ct. 1930. The Court reasoned that the witness's presence on the

---

**2.** "[T]he Sixth Amendment's right of an accused to confront the witnesses against him [or her] is ... a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

stand sufficiently satisfies the protections afforded by confrontation: the witness testifying under oath, the defendant having the opportunity to cross-examine the witness, and the jury having the opportunity to observe the witness's demeanor. *Id.* Nevertheless, the Court remanded on the issue whether the witness's "apparent lapse of memory so affected [the defendant's] right to cross-examine as to make a critical difference in the application of the Confrontation Clause," *id.* at 168, 90 S.Ct. 1930, seemingly leaving open the question presented by Torres.

{23} Since *Green,* however, the United States Supreme Court has definitively resolved this issue for purposes of the federal Confrontation Clause. In *United States v. Owens,* 484 U.S. 554, 556, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the accused attacked the use of a witness's out-of-court statement in response to the witness's failed memory. The Court held that "when a hearsay declarant is present at trial and subject to unrestricted cross-examination" then "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements." *Id.* at 560, 108 S.Ct. 838. The Court concluded that the witness's lack of memory, while changing the focus of cross-examination away from the foundation for the past belief, did not prevent the accused from using "other means of impugning the belief." *Id.* at 559, 108 S.Ct. 838. Thus, the admission of the out-of-court statement did not violate the Confrontation Clause of the Sixth Amendment. *Id.* at 564, 108 S.Ct. 838.

■ {24} In this case, Barnett testified at trial and was subject to unrestricted cross-examination by Torres. Torres had the opportunity to question Barnett concerning his testimony that he fired a shotgun, as well as concerning Barnett's lack of memory, but chose not to do so based on a claim of futility. In addition, the jury had the opportunity to observe Barnett's demeanor with respect to the substance of his testimony and with respect to his claim that he did not remember who accompanied him during the shooting. Under these circumstances, it is clear that Barnett's out-of-court statement did not infringe upon Torres's right of confrontation under the Sixth Amendment to the United States Constitution. *See Owens,* 484 U.S. at 557–61, 108 S.Ct. 838. Under *Owens,* further inquiry into the reliability of Barnett's statement for purposes of the federal Confrontation Clause is unnecessary. 484 U.S. at 560, 108 S.Ct. 838.

■ {25} Although the analysis in *Owens* resolves Torres's claim under the federal Confrontation Clause, we note that New Mexico has not previously addressed the declarant's presence on the witness stand and availability for unrestricted cross-examination in relation to the right of confrontation contained in Article II, Section 14 of the New Mexico Constitution. *See generally State v. Gomez,* 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1 (adopting the interstitial approach to state constitutional law under which the court first resolves whether the right being asserted is protected under the federal constitution and "[i]f it is not, then the state constitution is examined"). Although we are inclined to follow *Green* and hold that the Confrontation Clause in the New Mexico Constitution is satisfied by an effective opportunity to cross-examine the declarant at trial, we decline to address the impact of a declarant's lack of memory on the effectiveness of a defendant's right to cross-examination as was discussed by the United States Supreme Court in *Owens.* The parties in this case did not brief this issue under the New Mexico Constitution, and the trial court did not address this issue in resolving Torres's Confrontation Clause claims. Thus, we instead assume, without deciding, that Barnett's lack of memory "so affected [Torres's] right to cross-examine [Barnett] as to make a critical difference in the application of the Confrontation Clause" of the New Mexico Constitution. *Green,* 399 U.S. at 168, 90 S.Ct. 1930. Even assuming that Torres did not have an effective opportunity to cross-examine Barnett, we nonetheless conclude that Barnett's statement bears adequate indicia of reliability to satisfy the dictates of the Confrontation Clause of the New Mexico Constitution.

■ {26} The ability to cross-examine adverse witnesses is the primary means

of securing an accused's right of confrontation. As a result, the admission of an out-of-court statement generally survives constitutional scrutiny only if "the prosecution ... either produce[s], or demonstrate[s] the unavailability of, the declarant whose statement it wishes to use against the defendant," *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and the statement "bears 'adequate indicia of reliability,'" so as to neutralize any potential harm from the lack of cross-examination, *id.* at 66, 100 S.Ct. 2531.[3] Torres contends that Barnett's statement is not sufficiently reliable to satisfy the Confrontation Clause. We disagree.

{27} The Confrontation Clause sometimes requires the exclusion of evidence that would otherwise be admissible under an exception to the hearsay rule, depending upon the degree of reliability generally secured by the particular exception at issue. *See Idaho v. Wright*, 497 U.S. 805, 814–15, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. In our analysis of the Confrontation Clause, we first distinguish earlier precedent that addresses hearsay statements of accomplices and that might tend to suggest that such statements are inherently unreliable. We then conclude that the hearsay exception for declarations against penal interests is firmly rooted.

{28} The United States Supreme Court has previously addressed the applicability of the Confrontation Clause to out-of-court statements implicating the accused made by an accomplice while in custody. "Over the years since *Douglas [v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) ], the Court has spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants." *Lee v. Illinois*, 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). In *Lee*, the trial court admitted a statement by an accomplice even though the statement was made while the declarant "not only had a theoretical motive to distort the facts to [the defendant's] detriment, but [while] he also was actively considering the possibility of becoming her adversary." *Id.* at 544, 106 S.Ct. 2056. The Court deemed the portions of the statement inculpating the accused inherently unreliable "because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." *Id.* at 545, 106 S.Ct. 2056. The Court concluded that admission of the statement violated the Confrontation Clause because there were not "sufficient 'indicia of reliability'" to rebut "the weighty presumption against the admission of such uncross-examined evidence." *Id.* at 546, 106 S.Ct. 2056. In applying the Supreme Court's decision in *Lee*, we previously relied on four factors in determining that an accomplice's in-custody statement satisfied the Confrontation Clause: (1) the absence of any offer of leniency for the declarant's statement; (2) the statement was against the declarant's penal interest; (3) the statement did not attempt to shift responsibility away from the declarant; and (4) the statement was corroborated by independent evidence. *See State v. Earnest*, 106 N.M. 411, 412, 744 P.2d 539, 540 (1987); *see also Sanchez*, 112 N.M. at 63–65, 811 P.2d at 96–98 (relying on *Earnest* ). We believe,

---

**3.** Although Torres argues on appeal that a "heightened level of protection under the New Mexico Constitution should apply" in this case, an argument Torres properly preserved in the trial court, *see Gomez*, 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1 (discussing preservation requirements if precedent exists construing state provision more broadly than federal); *State v. Lopez*, 1996–NMCA–101, ¶ 20, 122 N.M. 459, 926 P.2d 784 (construing Article II, Section 14 more broadly than federal precedent on the issue of unavailability), he offers no persuasive reasons to suggest that the federal requirement of "adequate indicia of reliability" fails to protect an accused's right of confrontation under Article II, Section 14. As a result, because we currently believe the federal standard provides adequate safeguards, we apply federal precedent in this case. *Cf. State v. Woodruff*, 1997–NMSC–061, ¶ 38, 124 N.M. 388, 951 P.2d 605 (declining to construe a state constitutional provision more broadly than its federal analog because the defendant failed to "provid[e] a basis for divergence from federal precedent ... and [the Court's] own research and analysis has identified none").

however, that this analysis is no longer necessary in order to ensure that declarations against interest admissible under Rule 11–804(B)(3) satisfy the Confrontation Clause.

{29} The Court in *Lee* addressed a statement admitted pursuant to Illinois law. In response to a suggestion that the statement was a declaration against interest, the Court determined that "[t]hat concept defines *too large a class for meaningful* Confrontation Clause analysis. We decide this case as involving a confession by an accomplice which incriminates a criminal defendant." *Lee,* 476 U.S. at 544 n. 5, 106 S.Ct. 2056. By contrast, in our interpretation of Rule 11–804(B)(3), we have adopted the analysis articulated by the United States Supreme Court in *Williamson.* In that case, which involved the confession of an accomplice that was made while in custody and that incriminated the defendant, the Court stated that "the very fact that a statement is genuinely self-inculpatory-which our reading of Rule 804(b)(3) requires-is itself one of the 'particularized guarantees of trustworthiness' that makes a statement admissible under the Confrontation Clause." *Williamson,* 512 U.S. at 605, 114 S.Ct. 2431 (citing *Lee,* 476 U.S. at 543–45, 106 S.Ct. 2056). With the exception of the final factor articulated in *Earnest,*[4] we believe that the *Earnest* analysis has been subsumed within our interpretation of Rule 11–804(B)(3). In evaluating whether a declarant's statements satisfy Rule 11–804(B)(3) and whether a reasonable person would not have made the statements unless believing them to be true, the trial court should examine the statement in light of all surrounding circumstances, including to whom the statement was made, *see Gutierrez,* 119 N.M. at 661, 894 P.2d at 1017, whether the declarant attempted to curry favor with authorities, *see Huerta,* 104 N.M. at 342–43, 721 P.2d at 410–11, and whether the statement is collateral to the declarant's criminal liability or exculpatory of the declarant, *see Williamson,* 512 U.S. at 600, 114 S.Ct. 2431. Thus, we believe that, given our interpretation of Rule 11–804(B)(3), the concerns expressed by the Court in *Lee* no longer apply in New Mexico. *See United States v. York,* 933 F.2d 1343, 1363 (7th Cir.1991) ("The fear that inculpatory statements are unreliable stems largely from the presumption that such statements are self-serving, offered only to shift the blame from the declarant to another. But when, as here, the inculpatory portion of a statement is also against the declarant's interest, or when it is neutral because the declarant has not attempted to diminish his own role, there is little reason to suspect that portion of an otherwise reliable statement is untrustworthy."); *United States v.. Aldana,* 4 F.Supp.2d 1325, 1328 n. 2 (D.Utah 1998) ("New Mexico could interpret its own version of 804(b)(3) differently than that in *Williamson.* Many states have done so.... If a state has followed *Williamson,* no confrontation issue should exist. If not, an analysis under [*Lee* ] and [*Roberts* ] is required to show the requisite reliability."). *Compare United States v. Barone,* 114 F.3d 1284, 1302 (1st Cir.) ("We think that where, as here, it is clear that the statements inculpating both the declarant and the defendant were not made in order to

---

**4.** The United States Supreme Court has clarified that the Confrontation Clause requires that statements be inherently trustworthy and that independent corroborative evidence is irrelevant to such an inquiry. *See Wright,* 497 U.S. at 822, 110 S.Ct. 3139 ("[H]earsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial."); *see also Gutierrez,* 119 N.M. at 662, 894 P.2d at 1018 (discussing this requirement in *Wright*). We agree that independent evidence is irrelevant to the reliability of a statement incriminating the accused and that reliance on such evidence is better suited to a harmless error analysis. Therefore, we conclude that trial courts should not consider independent corroborative evidence in determining the admissibility of statements incriminating the accused under Rule 11–804(B)(3). *Cf. Newton,* 966 P.2d at 574 (limiting a corroboration inquiry pursuant to the hearsay exception for declarations against penal interest to the circumstances surrounding the making of the statement and excluding from the inquiry independent evidence introduced at trial in order to be consistent with the Confrontation Clause). The trial court, relying on *Sanchez,* 112 N.M. at 63, 811 P.2d at 96, considered independent corroborative evidence in admitting Barnett's statement; however, given the fact that the statement met all three of the remaining *Earnest* factors, we do not believe that the consideration of independent evidence affected the trial court's ultimate conclusion that the statement was sufficiently reliable to satisfy the Confrontation Clause.

limit the declarant's exposure to criminal liability, the declarations against interest exception is properly treated as firmly rooted for Confrontation Clause purposes."), *cert. denied*, —— U.S. ——, 118 S.Ct. 614, 139 L.Ed.2d 500 (1997), *with Earnest v. Dorsey*, 87 F.3d 1123, 1131 (10th Cir.) (concluding that, under *Lee*, custodial confessions by an accomplice are presumptively unreliable and cannot be categorized simply as statements against interest), *cert. denied*, 519 U.S. 1016, 117 S.Ct. 527, 136 L.Ed.2d 414 (1996). Therefore, we turn to the question of whether the exception for declarations against penal interests is firmly rooted for purposes of satisfying the Confrontation Clause.

{30} In determining whether an exception to the hearsay rule is firmly rooted for purposes of the Confrontation Clause, we "consider the exception's historical longevity and widespread acceptance," *Ross*, 122 N.M. at 24, 919 P.2d at 1089, and whether the exception is narrowly tailored in such a way as to limit admissibility to statements bearing adequate indicia of reliability. At common law, courts widely recognized that declarations against pecuniary interest constituted an exception to the hearsay rule. 2 Kenneth S. Broun et al., *McCormick on Evidence* § 316, at 336–37 (John William Strong ed., 4th ed.1992) [hereinafter *McCormick on Evidence* ]. Such declarations included acknowledgment of a debt, *id.* § 317, at 338, as well as "acknowledgment of facts which would give rise to a liability for unliquidated damages for tort or seemingly for breach of contract," *id.* at 339 (footnote omitted). Common law courts routinely admitted these statements because the fact that individuals would be unlikely to damage their own interests gave such statements "the safeguard of special trustworthiness justifying most of the exceptions to the hearsay rule." *Id.* § 316, at 336. As a result of this "longstanding judicial and legislative experience in assessing [its] trustworthiness," it is without question that the exception for declarations against pecuniary or proprietary interests is a firmly rooted exception to the hearsay rule and poses an insignificant risk of unreliability under the Confrontation Clause.

{31} Nonetheless, common law courts did not extend the application of this exception to declarations against penal interests. In rejecting this common law distinction, however, the drafters of the Federal Rules of Evidence recognized that the exclusion of statements against penal, as opposed to proprietary, interest "is inconsistent with the broad language originally employed in stating the reason and principle of the present exception." 5 John Henry Wigmore, *Evidence in Trials at Common Law* § 1477, at 358 (James H. Chadbourn rev.1974); *see also Donnelly v. United States*, 228 U.S. 243, 278, 33 S.Ct. 449, 57 L.Ed. 820 (1913) (Holmes, J., dissenting) (relying on Wigmore and stating that "no other statement is so much against interest as a confession of murder"). This approach is now widely accepted in the United States. *See generally McCormick on Evidence, supra*, § 318. In addition, the United States Supreme Court's interpretation of federal Rule 804(b)(3), which we adopt in this opinion, ensures that declarations against interest will be uniformly reliable. *See Aldana*, 4 F.Supp.2d at 1329 (stating that "the rule is satisfactorily constitutionalized by *Williamson* "). Finally, we note that declarations against penal interests will often meet the criteria for the common law exception for declarations against propriety interest because the admission of criminal liability frequently translates into an admission of civil liability. *See McCormick on Evidence, supra*, § 318, at 340 (stating that some common law courts relied on the connection between criminal and civil liability in admitting criminal confessions by unavailable witnesses). In this case, for example, while Barnett's statements genuinely inculpated him for criminal charges as severe as depraved-mind murder, those statements could also tend to subject Barnett to civil liability for wrongful death. *See* NMSA 1978, § 41–2–1 (1891) (declaring that an individual who causes another's death by wrongful act "although such death shall have been caused under such circumstances as amount in law to a felony ... shall be liable to an action for damages"). *See generally GCM, Inc. v. Kentucky Cent. Life Ins. Co .*, 1997–NMSC–052, ¶ 15, 124 N.M. 186, 947 P.2d 143 ("[I]t is

clear that tort liability for aiding and abetting a tortious action exists in New Mexico.").

{32} For these reasons, we join a growing number of jurisdictions[5] and conclude that Rule 11–804(B)(3) is a firmly rooted hearsay exception for purposes of satisfying the indicia of reliability requirement of the Confrontation Clause. From this conclusion, we infer that Barnett's statement is sufficiently reliable to satisfy the Confrontation Clause of both the United States Constitution and the New Mexico Constitution. As a result, the trial court's admission of Barnett's statement did not violate Torres's right of confrontation.

## IV. Conclusion

{33} We adopt the United States Supreme Court's interpretation of Rule 804(b)(3) of the Federal Rules of Evidence in our interpretation of Rule 11–804(B)(3). Under the Court's *Williamson* analysis, declarations against interest must be evaluated on a statement-by-statement basis. Collateral and self-exculpatory statements of the declarant are inadmissible, while facially and contextually self-inculpatory statements may be admitted if the declarant is unavailable. Having examined Barnett's narrative to the police, we conclude that each of his statements was either facially or contextually self-inculpatory. We also conclude that Barnett did not attempt to shift blame to Torres. Thus, the trial court did not abuse its discretion in admitting Barnett's statement pursuant to Rule 11–804(B)(3).

{34} The Confrontation Clause requires that defendants have a meaningful opportunity to confront the witnesses against them. We conclude that Barnett's presence on the witness stand and his availability for unrestricted cross-examination satisfied the Sixth and Fourteenth Amendments to the United States Constitution. Additionally, we conclude that the exception to the hearsay rule for statements against penal interest found in Rule 11–804(B)(3) is a firmly rooted exception. Thus, we conclude that Barnett's statement bore adequate indicia of reliability to satisfy the Confrontation Clause of both the United States Constitution and the New Mexico Constitution. Therefore, we affirm Torres's convictions.

{35} **IT IS SO ORDERED.**

BACA, MINZNER and MCKINNON, JJ., concur.

FRANCHINI, Chief Justice (dissenting).

{36} I DISSENT.

5. "The weight of authority, post *Lee v. Illinois* and *Williamson,* supports the conclusion that the exception to the hearsay rule for a statement against penal interest is a firmly rooted exception to the hearsay rule." *Aldana,* 4 F.Supp.2d at 1329; *accord United States v. Keltner,* 147 F.3d 662, 671 (8th Cir.), *cert. denied,* — U.S. —, 119 S.Ct. 574, 142 L.Ed.2d 478 (1998); *Neuman v. Rivers,* 125 F.3d 315, 319 (6th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 631, 139 L.Ed.2d 610 (1997); *United States v. Saccoccia,* 58 F.3d 754, 779 (1st Cir.1995); *York,* 933 F.2d at 1363–

64; *Lilly v. Commonwealth,* 255 Va. 558, 499 S.E.2d 522, 534(Va.), *cert. granted,* — U.S. —, 119 S.Ct. 443, 142 L.Ed.2d 398 (1998). *But see United States v. Flores,* 985 F.2d 770, 775–76 (5th Cir.1993) (concluding the exception is not firmly rooted); *Franqui v. State,* 699 So.2d 1312, 1319 (Fla.1997) (stating that, due to recent origin in present form in Florida law, the exception was not firmly rooted), *cert. denied,* — U.S. —, 118 S.Ct. 1337, 140 L.Ed.2d 499 (1998); *Simmons v. State,* 333 Md. 547, 636 A.2d 463, 469 (1994) (concluding the exception is not firmly rooted).